35 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carlos HERNANDEZ-URENA, Defendant-Appellant.
 No. 92-50747.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 8, 1993.
Decided Sept. 13, 1994.
 
 1
 Before: FLETCHER and D.W. NELSON, Circuit Judges, and WILL,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Hernandez-Urena appeals his conviction on retrial for conspiracy to distribute and distribution of heroin in violation of 21 U.S.C. Secs. 846 & 841(a)(1), and for carrying a firearm during a drug offense in violation of 18 U.S.C. Sec. 924(c). On appeal, Hernandez-Urena argues that his retrial was held in violation of Sec. 3161(e) of the Speedy Trial Act.
 
 
 4
 We have jurisdiction to hear this timely appeal pursuant to 28 U.S.C. Sec. 1291, and we affirm the defendant's conviction.
 
 I. BACKGROUND
 
 5
 On November 28, 1988, after a trial by jury, defendants Carlos Hernandez-Urena and Secundino Navarro-Romero were convicted of conspiracy to distribute heroin in violation of 21 U.S.C. Sec. 846, distribution of heroin in violation of 21 U.S.C. Sec. 841(a)(1), and carrying a firearm during a drug trafficking crime in violation of 18 U.S.C. Sec. 924(c). The magistrate judge played a role in supervising jury selection in that trial. Hernandez-Urena and Navarro-Romero appealed separately from their convictions.
 
 
 6
 Navarro-Romero filed his appellate brief on March 11, 1991, arguing that his conviction must be reversed on the grounds that a magistrate conducted the voir dire and impaneled the jury in his case. Between the trial and the filing of his appellate brief, the Supreme Court affirmed United States v. France, 886 F.2d 223 (9th Cir.1989), aff'd by equally divided vote, 498 U.S. 335, 111 S.Ct. 805 (1991) (per curiam). In France, the Ninth Circuit had held that: (1) the Supreme Court's decision in Gomez v. United States, 490 U.S. 858 (1989) (prohibiting federal magistrates from conducting jury selection in felony trials) retroactively applies to all cases pending on direct review or not yet final on the date of mandate of the case; and (2) that the defendant's failure to object to magistrate jury selection for a felony trial did not result in waiver of that right, because circuit authority at the time of trial indicated that a magistrate could select the jury. Navarro-Romero thus argued in his appellate brief that his conviction should be reversed in light of France and Gomez. He asserted erroneously that "[t]here is no indication in the file or the docket that a waiver of impanelment before the Judge was either sought or obtained." Br. of Appellant Navarro-Romero in No. 89-50002, at 5 p 4, 9 p 2.
 
 
 7
 However, both defendants had in fact consented to the magistrate's supervision of jury selection. First, the voir dire transcript reveals that the defendants had consented to the magistrate's supervision of jury selection.[1] Second, the trial transcript reveals that the district court subsequently confirmed the defendants' consent to the magistrate's supervision of jury selection.[2] Unfortunately, these facts were misrepresented in Navarro-Romero's appellate brief to the Ninth Circuit. Moreover, because the government had failed to discover the defendants' consent to magistrate jury selection, the government responded to Navarro-Romero's brief by confessing error in light of the Supreme Court's affirmance of France.
 
 
 8
 On June 21, 1991, the Supreme Court ruled in Peretz v. United States, 501 U.S. 923, 111 S.Ct. 2661, 2667-71 (1991), that a defendant's consent cures all problems stemming from a magistrate's supervision of jury selection. Because both Hernandez-Urena and Navarro-Romero had in fact consented to magistrate supervision of jury selection, this decision should have determined their appeals. However, because the fact of their consent was not presented to the appellate court, the Ninth Circuit, in an unpublished opinion issued on December 13, 1991, reversed the convictions of both Hernandez-Urena[3] and Navarro-Romero and ordered a retrial, noting that "[t]he parties agree that the co-defendants were not given an opportunity to object or consent to the magistrate's selection of the jury." Gov't ER at 14 (unpublished Ninth Circuit opinion in Nos. 89-50002, 89-50006). The Ninth Circuit issued its mandate on March 26, 1992.
 
 
 9
 On remand, the district court held its first hearing 38 days after issuance of the mandate, on May 4, 1992. At that time, the district court announced its intention to file and spread the mandate. The government immediately pointed out that the Ninth Circuit decision was based on inaccurate information concerning the defendants' consent to the magistrate jury selection and requested that the court continue the filing and spreading of the mandate until rehearing could be requested. Hernandez-Urena did not object, and the district court thus granted a two-week continuance. On June 1, 1992, without objection by Hernandez-Urena, the district court again continued the filing and spreading of the mandate for 30 days, and the government subsequently filed its motion to recall the mandate with the Ninth Circuit on June 3, 1992. On June 30, 1992, the district court again continued the filing and spreading of the mandate for 30 days, noting that "[s]hould the mandate not be recalled, the defendant[s] will be provided a very speedy trial." Excerpt of Record ("ER") at 27 (June 30, 1992 Tr.).
 
 
 10
 On June 25, 1992, the government filed its Motion for Leave to File Late Petition for Rehearing. In its current brief, the government states that this motion was granted, because the deputy clerk had stamped the motion "ORDERED--Motion for extension of time to file petition for rehearing granted to: Appellees, to and including 7/24/92, For the Court." Gov't ER at 23. However, the deputy clerk responsible for the stamp was in error--the motion was never in fact granted. On July 1, 1992, the Ninth Circuit ordered the defendants to "respond to the government's motion to file a late petition for rehearing and to recall the mandate." Gov't ER at 80. Hernandez-Urena opposed the government's motions, arguing that the government alleged no new facts which could not have been discovered within the 14-day period normally allowed under Rule 40 of the Federal Rules of Appellate Procedure. On August 6, 1992, this Court denied the government's motions to recall the mandate and to file a late petition for rehearing. Gov't ER at 33 (Aug. 19, 1992 Tr.).
 
 
 11
 The district court held a hearing on August 19, 1992, at which time it was informed that the petition for rehearing had been denied. Accordingly, the district court spread the mandate on the minutes of the court and set the case for retrial on October 20, 1992, 63 days later. At this time, on August 19, Hernandez-Urena stated that this scheduled trial date was satisfactory.
 
 
 12
 On October 21, 1992, the first day of trial,[4] Hernandez-Urena for the first time objected to the trial date and moved to dismiss the indictment for an alleged violation of the Speedy Trial Act. Although the court denied the oral motion, it invited written filings. The district court later denied the written motion for dismissal "for the reasons stated in the government's proposed order on the matter." ER at 45 (Nov. 30, 1992 Tr.). Upon retrial, Hernandez-Urena was again convicted on all three counts. It is from this conviction that Hernandez-Urena now appeals, claiming that his retrial, which occurred 208 days after the original issuance of the Ninth Circuit mandate, violated the Speedy Trial Act.
 
 
 13
 As the foregoing summary indicates, Hernandez-Urena was originally convicted in 1988 by a jury selected using a proper jury selection procedure to which he had specifically agreed. As a result of a co-defense counsel's misrepresentation that his co-defendant had not consented to the procedure and government counsel's failure to point out the misrepresentation and that both defendants had in fact consented, Hernandez-Urena, who had not even raised the jury selection question on appeal, was granted a new trial.
 
 
 14
 Because the government, after belatedly discovering the misrepresentation, sought to persuade this Court to reverse its ruling and withdraw its mandate, the district court postponed any retrial until after this Court had ruled on the government's motion. Finally, on August 6, 1992, the motion to reverse the ruling and withdraw the mandate was denied on the ground that it was late.
 
 
 15
 Thereafter, commencing on October 21, 1992, a trial date to which he had agreed and almost four years after his original conviction, Hernandez-Urena was tried again by a jury and again found guilty. At that time, he first raised a question about the Speedy Trial Act, although his counsel and he had previously agreed to all of the continuances pending disposition of the government's motion to recall the mandate and had agreed to the ultimate trial date. On appeal, he asks that we set aside his second conviction and either dismiss the indictment against him or grant him a third trial.
 
 II. DISCUSSION
 
 16
 Hernandez-Urena appeals from his second district court conviction, alleging that his retrial was held in violation of Section 3161(e) of the Speedy Trial Act. Factual findings concerning the Speedy Trial Act are reviewed for clear error and questions of law regarding interpretation of the Speedy Trial Act are reviewed de novo. United States v. Orbino, 981 F.2d 1035, 1036 (9th Cir.1992), cert. denied, --- U.S. ----, 114 S.Ct. 256 (1993).
 
 A. The Action Occasioning Retrial
 
 17
 Section 3161(e) of the Speedy Trial Act states that "[i]f the defendant is to be tried again following an appeal ... the trial shall commence within seventy days from the date the action occasioning the retrial becomes final...." 18 U.S.C. Sec. 3161(e). Our analysis must therefore begin with a determination of the date on which the action occasioning Hernandez-Urena's retrial became final.
 
 
 18
 The parties have posited various arguments both in their briefs and at oral argument as to when the action occasioning retrial became final.[5] However, it is settled in the Ninth Circuit that the date the action occasioning retrial becomes final is the date on which the mandate is issued by the appellate court. United States v. Crooks, 826 F.2d 4, 5 (9th Cir.1987) (modifying previous ruling to hold that "for an appeal 'the date the action occasioning retrial became final is the day the mandate is issued.' ") ( quoting United States v. Ross, 654 F.2d 612, 616 (9th Cir.), cert. denied, 454 U.S. 1090 (1981)). The Ninth Circuit mandate in this case was issued on March 26, 1992. Therefore, March 26, 1992 is the date the action occasioning retrial became final.
 
 B. Extension of Retrial Period to 180 Days
 
 19
 The district court denied the defendant's Speedy Trial Act motion "for the reasons set forth in the government's proposed order on the matter." ER at 45. The government's order stated that "the time within which this case was to be retried shall be extended to 180 days due to the unavailability of witnesses and other factors as described above that would have made a retrial any sooner impractical." Gov't ER at 84-85 (Government's Proposed Findings of Fact and Order Re Excludable Time Pursuant to Speedy Trial Act).
 
 
 20
 Section 3161(e) of the Speedy Trial Act provides that "the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from the passage of time shall make trial within seventy days impractical." 18 U.S.C. 3161(e). See, e.g., United States v. Young, 593 F.2d 891 (9th Cir.1979).
 
 
 21
 Several factors in this case, all "resulting from the passage of time," justify such an extension. The Assistant United States Attorney ("AUSA") who had originally tried the case left government service in March of 1991. The case agent, another principal agent in the case, as well as the confidential informant, could not be readily located or contacted. The case files, including a transcript of the proceeding in which the defendants consented to magistrate jury selection, were misplaced for a period of time. Gov't ER at 64, 83. Following discussion of the missing files at the May 4, 1992 hearing, the district court granted a two-week continuance to allow the government further time to investigate this matter.
 
 
 22
 Moreover, the government's extensive efforts to revoke the mandate and to seek rehearing certainly made retrial impractical given the unique circumstances of this case. The impracticality of proceeding with the retrial is readily apparent in the record. At each pretrial hearing, the district court granted continuances based on the fact that the government's appellate efforts were still pending. The district court obviously believed that jurisdiction was vested in the appellate court for the duration of these proceedings.
 
 
 23
 At the May 4, 1992 hearing, the court indicated that, due in part to the absence of the transcript documenting the defendants' consent to magistrate jury selection, the proceedings should be continued: "Therefore, I think I will grant the continuance of this spreading and filing of the minutes [sic] for a period of two weeks to allow the government to further pursue the issue." ER at 12 (May 4, 1992 Tr.). At the June 1, 1992 hearing, the court stated that it was granting a 30-day continuance based on the government's filing of a motion to recall the Ninth Circuit mandate: "So I will continue this for 30 days and see if a ruling is made." ER at 21 (June 1, 1992 Tr.). Finally, at the June 30, 1992 hearing, the court again indicated that it would continue the filing and spreading of the mandate for 30 days pending a decision by the Ninth Circuit on the government's petitions to recall the mandate and for rehearing. After the government requested another 30-day continuance based on a hope that the Ninth Circuit would have reached a decision by that point, the court agreed: "All right. I believe that is appropriate." ER at 26 (June 30, 1992 Tr.).
 
 
 24
 Defendant argues that the district court failed to articulate "any reason relating to either the unavailability of witnesses or passage of time which would require the time for a retrial to be enlarged to 180 days." Br. of Appellant at 11-12. However, as the government correctly points out, at no hearing prior to retrial did Hernandez-Urena raise any concern whatsoever about the delay of his retrial. Indeed, at no hearing did Hernandez-Urena even object to the district court's continuances of the filing and spreading of the mandate. Following its receipt of written filings on the defendant's motion to dismiss for a violation of the Speedy Trial Act, the district court stated on the record that it had denied the motion for the reasons stated in the government's proposed order. As explained above, these reasons constituted legitimate cause for extension of the retrial period to 180 days.
 
 
 25
 For these reasons, we find that the district court effectively extended the time for retrial to 180 days pursuant to Sec. 3161(e) of the Speedy Trial Act when it adopted the government's proposed order.
 
 C. Excludable Time
 
 26
 The date on which the mandate originally issued, ordering a retrial on the erroneous grounds that the defendants had not consented to the magistrate's participation in the jury selection, was March 26, 1992. The retrial occurred 208 days later, on October 21, 1992. In order for the 180-day extension effectively to prevent a Speedy Trial Act violation, at least 28 days must be excludable.
 
 
 27
 Section 3161(h)(1) provides a non-exhaustive list of periods of time which must be excluded from a Speedy Trial Act calculation. The effect of these exclusions is automatic; the district court need not make contemporaneous findings as to their application.[6] See, e.g., United States v. Davenport, 935 F.2d 1223, 1228 (11th Cir.1991). The exclusions serve to lend flexibility to the act. As the Fourth Circuit has observed:
 
 
 28
 When drafting the Speedy Trial Act, Congress recognized that in processing criminal cases a mechanical adherence to time limits would not serve the interests of the defendant, the government, the courts, or society. Indeed, Congress considered flexibility necessary for the administration of the Act. See H.R.Rep. No. 1508 at 7402-08. A. Partridge, Legislative History of Title I of the Speedy Trial Act of 1974 94 (Fed.Judicial Center 1980). Congress, therefore, provided exemptions in Sec. 3161(h)(1) to toll the seventy day period. The 1979 amendments to the Act also indicate a desire to eliminate an unduly restrictive interpretation of excludable periods and to increase the Act's flexibility. See H.R.Rep. No. 390, 96th Cong., 1st Sess. 2-12, reprinted in, 1979 U.S. CODE CONG. & AD. NEWS 805, 806-16.
 
 
 29
 United States v. Black, 733 F.2d 349, 351 (4th Cir.1984) (footnote omitted). Such excludable periods cover both trial and appellate proceedings. Id.; United States v. Saintil, 705 F.2d 415, 417 (11th Cir.), cert. denied, 464 U.S. 855 (1983).
 
 
 30
 Section 3161(h)(1)(J) provides that a court may stay the period under the Speedy Trial Act for up to thirty days when "any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. Sec. 3161(h)(1)(J). See, e.g., Black, 733 F.2d at 351-52 (excluding 27 days during which petition for rehearing with en banc suggestion was under consideration). Pursuant to this provision, the period of time during which the government's motion to recall the mandate was under advisement in the Ninth Circuit is excludable.
 
 
 31
 The motion to recall the mandate was filed on June 3, 1992 and remained under consideration until August 6, 1992, when it was denied. Therefore, pursuant to Sec. 3161(h)(1)(J), 30 days--the maximum allowed under the section--must be excluded from the Speedy Trial Act calculation.
 
 D. The Speedy Trial Act Was Not Violated
 
 32
 To summarize, the action occasioning the retrial--the issuance of the mandate--occurred on March 26, 1992. The date of the retrial was October 21, 1992--208 days later. Exclusion of 30 days pursuant to Sec. 3161(h)(1)(J) reduces this period to 178 days, which falls within the 180-day extension period provided by the district court's application of Sec. 3161(e). Therefore, we find that there was no violation of the Speedy Trial Act.
 
 III. CONCLUSION
 
 33
 For the reasons articulated above, we find no Speedy Trial Act violation and affirm the defendant's conviction.
 
 
 34
 AFFIRMED.
 
 
 
 *
 Honorable Hubert L. Will, Senior United States District Judge for the Northern District of Illinois, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Before jury selection, the following exchange occurred among the magistrate and counsel:
 THE COURT: AS YOU KNOW, JUDGE RAFEEDIE HAS ASKED ME TO ASSIST BY PICKING THE JURY IN THIS CASE. DOES ANY COUNSEL HAVE OBJECTION TO THAT PRACTICE?
 MR. WERKSMAN: NO OBJECTION BY THE GOVERNMENT.
 MR. YACOBOZZI: NO OBJECTION ON BEHALF OF MR. URENA.
 MR. STEINBERG: NO OBJECTION ON BEHALF OF MR. NAVARRO-ROMERO.
 Government Excerpt of Record ("Gov't ER") at 17 (Oct. 25, 1988 Tr.).
 
 
 [2]
 On October 26, 1990, the following exchange occurred:
 THE COURT: AS I UNDERSTAND, PURSUANT TO A STIPULATION A JURY WAS SELECTED BEFORE THE MAGISTRATE. ISN'T THAT TRUE?
 MR. YACOBOZZI: YES, SIR.
 Gov't ER at 21 (Oct 26, 1990 Tr.).
 
 
 [3]
 Although Hernandez-Urena had not raised the magistrate issue in his appellate brief, the court raised it sua sponte, suggesting that to do otherwise would be unduly harsh to him
 
 
 [4]
 On October 20, 1992, the district court placed the trial on trailing status; the court called the case for retrial the next day
 
 
 [5]
 For example, the government proposes in its brief that notwithstanding the fact that the Ninth Circuit issued its mandate on March 26, 1992, the appellate process continued until August 19, 1992--the date on which the district court was informed of the Ninth Circuit's decision. The government argues that because it was not until August 19, 1992 that it abandoned its appellate efforts, had the district court set a trial date any earlier, the ongoing appellate process would have posed a danger of simultaneous appellate and trial proceedings. This danger did not vanish until August 19, 1992. Therefore, because the threat of appellate process remained until the district court spread the mandate on August 19, 1992, the government argues that it was on this date that the action occasioning retrial became final. Although the argument is logical, the government cites no case law authority to support such an approach and our research has revealed no cases either supporting or rejecting such a contention
 
 
 [6]
 The automatic application of the (h)(1) exclusions may be contrasted with the catch-all "ends of justice" exclusion of Sec. 3161(h)(8), which requires a district court to make explicit findings on the record that the "ends of justice served by [granting continuances] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. Sec. 3161(h)(8). See, e.g., United States v. Aviles-Alvarez, 868 F.2d 1108 (9th Cir.1989); United States v. Frey, 735 F.2d 350 (9th Cir.1984)