11-876-cr
United States v. Shellef

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————————

August Term, 2011

(Argued: June 20, 2012      Decided: May 23, 2013)

Docket No. 11-876-cr

———————————

UNITED STATES OF AMERICA,
                                                                          *Appellee*,

—v.—

DOV SHELLEF,
                                                                *Defendant-Appellant*.

———————————

Before:

LEVAL, POOLER, and RAGGI, *Circuit Judges*.

———————————

On appeal from a second judgment of conviction entered in the United States District Court for the Eastern District of New York (Joseph F. Bianco, *Judge*), defendant seeks vacatur of the judgment and dismissal of the indictment with prejudice on the ground that he was not retried following an earlier mandate of this court within the time prescribed by the Speedy Trial Act, see 18 U.S.C. § 3161(e).

AFFIRMED.

Judge Pooler dissents in a separate opinion.

1

SCOTT A. CHESIN (Andrew L. Frey, Andrew H. Schapiro, Mayer Brown LLP, New York, New York; Henry E. Mazurek, Clayman & Rosenberg LLP, New York, New York, *on the brief*), Mayer Brown LLP, New York, New York, *for Defendant-Appellant*.

JAMES B. NELSON (Sambhav N. Sankar; Ignacia S. Moreno, Assistant Attorney General, *on the brief*), Environmental & Natural Resources Division, U.S. Department of Justice, Washington, D.C., *for Appellee*.

REENA RAGGI, *Circuit Judge*:

This appeal from a judgment of conviction entered on February 28, 2011, in the United States District Court for the Eastern District of New York (Joseph F. Bianco, *Judge*), raises questions about the proper application of the Speedy Trial Act, 18 U.S.C. § 3161 et seq., on retrial, specifically, whether a district court may find factors supporting an extension of the time for retrial only within the initially prescribed 70-day period, see id. § 3161(e), or whether it may make such findings even after the 70-day period has passed. We confront these questions in the context of a record suggesting both insufficient prosecutorial attention to speedy trial obligations and a lack of candor by prior defense counsel about actual readiness for trial. Neither concern, however, determines this appeal. In the end, we conclude that, however preferable it may be for § 3161(e) findings extending the time for retrial to be made within the initial 70-day retrial period, the statute itself does not impose such a requirement. For that reason, and because we identify no error in the district court's decision to grant an extension to 180 days or in its determination that defendant was tried within that time, we affirm the challenged judgment.

2

## I. Background

### A. First Trial and Appeal

On July 28, 2005, defendant Dov Shellef and confederate William Rubenstein were found guilty after a six-week jury trial before Judge Joanna Seybert of one count of conspiracy to commit tax fraud, see 18 U.S.C. § 371; 26 U.S.C. §§ 4681–82, and 45 counts of substantive wire fraud, see 18 U.S.C. § 1343. These crimes arise out of a complex scheme to buy and sell an ozone-depleting chemical, CFC-113, without paying millions of dollars in required federal excise and income taxes. Shellef was also found guilty on 41 counts of money laundering, see id. § 1956(a)(1)(A)(i)–(ii), B(i); two counts of subscribing to false income tax returns, see 26 U.S.C. § 7206(1); and one count of personal income tax evasion, see id. § 7201.

On appeal, this court ruled that Shellef was entitled to have had the 1996 tax counts (but not the 1999 tax count) severed from the other charges against him, see United States v. Shellef ("Shellef I"), 507 F.3d 82, 99–100 (2d Cir. 2007), and to have had his trial severed from that of Rubenstein, see id. at 103. The initial judgment of conviction was, therefore, vacated and the case remanded for a new trial. See id.

### B. District Court Proceedings Following Mandate

This court's mandate in Shellef I issued on March 4, 2008, which all parties agree is the starting date for purposes of calculating time under the Speedy Trial Act provision governing retrials, see 18 U.S.C. § 3161(e). To facilitate our consideration of Shellef's

3

Speedy Trial Act challenge to his conviction on remand, we frame our discussion of the events following issuance of the mandate by reference to discrete time periods.

### 1. March 4 to April 10, 2008: Reassignment of Case to Judge Platt

Ten days after issuance of the mandate, by letter dated March 14, 2008, the government requested that Judge Seybert schedule a status conference, advising that the Shellef I remand would now require three trials for the two defendants. Before Judge Seybert acted on this request, the case was randomly reassigned on March 21, 2008, to Judge Thomas C. Platt pursuant to Eastern District Local Rule 50.2(*l*)(1).[1] On March 26, Judge Platt ordered the parties to appear for conference on April 10.

### 2. April 10, 2008: Discussion of Possible Need for Re-Indictment and Retrial in Early 2009

At the April 10 conference, a question arose as to whether, consistent with this court's severance ruling, the government could pursue the necessary retrials on the single existing indictment (the government's position), or needed to re-present the case to a grand jury to seek three distinct indictments (defendants' position). With Judge Platt initially inclined

---

[1] This local rule, which provides for the division of business among the judges of the Eastern District of New York, states in relevant part:

> In a criminal case upon reversal of a judgment and a direction for retrial or resentence, on receipt of the mandate of the appellate court the clerk shall randomly select a different judge to preside over the case. Notwithstanding this provision the chief judge may order the case assigned to the original presiding judge to avoid placing an excessive burden on another judge.

U.S. Dist. Ct., E.D.N.Y. L. Rules 50.2(*l*)(1).

4

toward the latter view, the government sought leave to brief the issue. Although it set no specific briefing schedule, the district court directed the government to include in its brief an assessment of the speedy trial status of the case.

The government advised the court that the parties had been exploring the possibility of retrial in early 2009. When Judge Platt observed that speedy trial exclusions would be necessary to delay retrial until 2009, the government stated that the case had already been declared a complex matter, presumably a reference to the Speedy Trial Act's continuance provision, see 18 U.S.C. § 3161(h)(7)(A), (B)(ii).[2] Shellef's then-counsel, Stuart E. Abrams, agreed that the case was complex, but emphasized that Shellef was not agreeing to "open-ended extensions of speedy trial time." April 10, 2008 Tr. 16:4–5. Judge Platt observed that he did not understand that to be the government's request, which the government confirmed. Nevertheless, Judge Platt agreed that the case was complex, identifying support for that conclusion in the Shellef I panel decision. He did not, however, expressly state that he was granting a continuance on April 10. Rather, he instructed the parties to consider the matter further so that they could ask for appropriate Speedy Trial Act exclusions at future court appearances.

---

[2] Section 3161(h)(7)(A) permits a district judge, on his own motion or at the request of one of the parties, to grant a continuance of trial on the basis of contemporaneous oral or written findings that the ends of justice are better served by the continuance than by a speedy trial. Among the factors properly considered in making such a determination is "[w]hether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by" the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(ii).

3. <u>May 19 to November 4, 2008: Government's Request for Trial Date and Shellef's First Speedy Trial Motion</u>

Approximately five weeks later, on May 19, 2008, the government requested that the district court set new trial dates in the case. In a four-page, single-spaced letter, the government presented legal argument as to why it could retry the defendants on the original indictment, contrary to reservations noted by Judge Platt and opposition voiced by defendants at the April 10 conference. On May 27, 2008, Judge Platt instructed the government, <u>inter alia</u>, to submit copies of the redacted indictments it proposed to use at the three anticipated retrials. For reasons not apparent from the record, the government did not comply until July 22, 2008.

Shellef never filed any opposition to the government's May 19 argument that retrial could proceed without new indictments. Instead, on June 3, 2008, his counsel Abrams filed a two-page motion seeking dismissal of the pending indictment on the ground that the 70-day period within which Shellef's retrial was required by 18 U.S.C. § 3161(e) had expired on May 13, 2008. Judge Platt denied the motion on July 24, 2008, finding that he had implicitly granted a speedy trial exclusion on April 10, 2008, pursuant to 18 U.S.C. § 3161(h)(7)(A), (B)(ii), based on the complexity of the case, which was then acknowledged by all parties who were seeking retrial in January 2009.[3]

---

[3] Although Judge Platt based his order on 18 U.S.C. § 3161(h)(8), that section was renumbered to 18 U.S.C. § 3161(h)(7) on October 13, 2008. <u>See</u> Pub. L. No. 110-406. For purposes of simplicity, we refer to the current version of the statute, even if cited cases discuss the older version.

Three months later, by letter dated October 29, 2008, the government again requested a status conference to set trial dates. On November 3, 2008, Judge Platt scheduled that conference for November 6, at which time it set Shellef's case for retrial on November 24. Meanwhile, on November 4, 2008, Abrams filed a motion to modify the conditions of Shellef's bail.

4.     November 4, 2008 to June 17, 2009: Shellef's Requests for Trial Continuances and Reassignment of Case to Judge Bianco

Shellef does not contest that the time between the November 4, 2008 bail motion and the start of trial on December 14, 2009, is properly excluded from speedy trial calculation. Thus, we need not discuss the particular exclusions supporting this conclusion in detail. Nevertheless, we think it useful to summarize the events giving rise to this 13-month period of further delay to provide context for the speedy trial issues raised on this appeal and to explain the reassignment of this case to Judge Bianco, whose final speedy trial assessment is here challenged.

At the November 6 conference, Abrams renewed his argument that Shellef had been denied speedy retrial. Judge Platt remained unconvinced, reiterating that he had implicitly granted a § 3161(h)(7) continuance based on complexity, running from the April 10, 2008 status conference through January 2009, the month the parties had identified for possible retrial. Nevertheless, in light of Shellef's speedy trial challenge, Judge Platt proceeded to set November 24, 2008, for Rubenstein's retrial, to be followed immediately by Shellef's retrial. Rubenstein's counsel objected to the trial date, invoking scheduled medical treatments and

7

ongoing plea negotiations. Judge Platt maintained the date, advising that if the case against Rubenstein were resolved by plea before November 24, the government should be prepared to begin Shellef's retrial on that date. Abrams objected, noting that he was currently engaged in a trial that would not be concluded by late November. Following Judge Platt's suggestion that Shellef retain other counsel who could try the case as scheduled, Abrams advised that a late November trial still might not be realistic because he expected to file additional motions addressed to the government's decision not to re-indict and to unspecified issues raised by the Shellef I ruling. Judge Platt suggested that Shellef's efforts to avoid a November 24 trial cast doubt on the sincerity of his earlier speedy trial protest.

On November 17, Abrams advised the district court that his client had been unable to secure new counsel to retry the case on November 24, and that the trial in which he was engaged would not conclude until mid-December. Abrams proposed that new pretrial motions be filed by December 22, 2008, and that trial be adjourned until February 12, 2009. In support of this schedule, Shellef agreed to a § 3161(h)(7) continuance of speedy trial in the interests of justice. The district court accordingly rescheduled trial for February 17, 2009.

On January 5, 2009, Abrams again moved to adjourn trial, as well as for leave to withdraw, for the first time advising Judge Platt that Shellef had not finalized Abrams's retention for retrial. At the ensuing January 13 conference, Abrams stated that if the court would release $250,000 of the money Shellef had posted for bail, Shellef would be able to

8

effect Abrams's retention, allowing retrial to proceed as scheduled without "the problem of having [to secure] new counsel." Jan. 13, 2009 Tr. 5:18–19. With the government's consent, the district court released the money. The counsel "problem," however, was not eliminated.

By letter dated February 5, 2009, attorney Henry E. Mazurek sought leave to substitute as Shellef's counsel and requested a 60-day continuance of the trial date to afford him adequate time for preparation. Judge Platt denied the application on February 11, 2009, at an apparently untranscribed telephone conference. Presumably, he had not yet seen Shellef's supporting declaration, dated February 10, which advised that it had been his intention since "remand . . . in March 2008" to seek new counsel for retrial because of "fundamental disagreements and irreconcilable differences" with counsel of record about his defense. Shellef Decl. 2 (Feb. 10, 2009). Shellef attributed his failure to do so to financial constraints that persisted until the district court's release of bail funds. Shellef represented that Abrams had agreed to represent him on remand only for purposes of bail and speedy trial and that the two had had no "adequate substantive meetings or communications" with respect to defense strategy at retrial. Id. Shellef did not explain why these circumstances—presumably making it impossible to proceed to retrial at any time between March 2008 and February 2009—had not been disclosed earlier to the district court. By written order dated February 17, 2009, Judge Platt adhered to his original decision denying substitution.

9

Shellef petitioned this court for a writ of mandamus, which was denied on March 13, 2009. See In re Dov Shellef, 09-0607-mr (2d Cir. Mar. 13, 2009) (order denying mandamus). The order nevertheless identified various constitutional concerns arising from Shellef's claim that the denial of Mazurek's application was forcing him "unwillingly to proceed to trial pro se," which this court assumed Judge Platt would address before retrial. Id. at 2.

With jury selection scheduled to begin on the afternoon of March 24, Judge Platt heard extensively from Shellef and Abrams on that morning and the day before about Shellef's professed longstanding intent to secure different representation for retrial, his current dysfunctional relationship with counsel of record, and his unwillingness to represent himself. Judge Platt remained adamant in refusing to allow a substitution of counsel that would require adjournment of trial. The judge voiced frustration that, at past status conferences, Abrams had given the misimpression that, but for scheduling conflicts and lack of funds, he stood ready to retry the case. The judge further characterized as inadequate a proposed stipulation to waive speedy trial challenges that operated only prospectively. Abrams construed the latter statement as impermissibly conditioning Shellef's choice of counsel on the withdrawal of the original speedy trial challenge, prompting a heated exchange that ultimately led Abrams to request Judge Platt's recusal, which request was denied.

At the same time that these proceedings were being conducted in the district court, Mazurek successfully obtained a temporary stay of trial from this court while he petitioned for a writ of mandamus. See In re Dov Shellef, 09-1183-op (2d Cir. Mar. 24, 2009) (motion for emergency stay of trial and writ of mandamus). On April 15, 2009, this court granted mandamus to the extent of ordering reassignment of the case to a different judge. See In re Dov Shellef, 09-1183-op (2d Cir. Apr. 15, 2009) (order granting mandamus). Pursuant to the mandate, which issued on June 2, 2009, the case was reassigned to Judge Bianco on June 17, 2009.

5.  June 17, 2009 to February 28, 2011: Shellef's Second Speedy Trial Motion and the Challenged Judgment of Conviction

At a June 24, 2009 status conference, Judge Bianco set December 7, 2009, for retrial, with Shellef agreeing to the exclusion of all intervening time from speedy trial calculation. On September 3, 2009, Mazurek moved to dismiss the pending indictment based on speedy trial delays occurring before November 4, 2008. The district court denied the motion orally on November 19, 2009, and on January 14, 2011, after the conclusion of trial and post-trial proceedings, filed a detailed memorandum and order explaining its reasoning. See United States v. Shellef, 756 F. Supp. 2d 280 (E.D.N.Y. 2011).

Therein, Judge Bianco construed the record of proceedings on April 10, 2008, to reflect an implicit finding by Judge Platt that retrial within 70 days of the mandate would have been impractical, and to extend the time for retrial to 180 days pursuant to 18 U.S.C. § 3161(e). Even in the absence of such action by Judge Platt, however, Judge Bianco

11

concluded that he had the authority to make the same finding of impracticality and to extend the time for retrial to 180 days, which he did.

In considering whether Shellef had been tried within the required 180 days, Judge Bianco focused on the 246 days between the March 4, 2008 mandate and the November 4, 2008 filing of Shellef's bail motion—after which time Shellef concedes the proper exclusion of all time through the start of trial on December 14, 2009. Observing that at least 66 of these 246 days had to be excludable under the Speedy Trial Act for Shellef's retrial to be timely, the district court identified the following periods of excludable delay:

First, the five days spanning March 28, 2008, to April 1, 2008, were automatically excluded while Shellef's first motion to modify bail was pending. See 18 U.S.C. § 3161(h)(1)(D).

Second, the 52 days spanning June 3, 2008, to July 24, 2008, were automatically excluded while Shellef's first speedy trial motion was pending. See id.

Third, at least 15 additional days, from May 19, 2008, to June 3, 2008, were automatically excluded while the government's motion to set trial dates was pending before Shellef's first speedy trial motion was filed. See id.

Fourth, one day, April 10, 2008, was excluded because of the status conference on that date. See id. § 3161(h)(1); United States v. Lucky, 569 F.3d 101, 107 (2d Cir. 2009).

Because these excludable periods totaled 73 days, Judge Bianco concluded that only 173 days of unexcluded time had elapsed between March 4 and November 4, 2008.

Accordingly, Judge Bianco rejected Shellef's speedy trial challenge as without merit, finding that he was retried within 180 days of unexcluded time from this court's mandate.

Shellef's retrial commenced on December 14, 2009, with former co-defendant Rubenstein among the witnesses testifying against him. On January 27, 2010, a jury found Shellef guilty of one count of conspiracy to commit tax fraud, 43 counts of wire fraud, 41 counts of money laundering, and one count of filing a false tax return.

Upon review of Shellef's post-trial motions, the district court dismissed 33 of the money laundering counts of conviction as duplicative. On January 31, 2011, it sentenced Shellef to a total of five years' imprisonment, three years' supervised release, and a special assessment of $5,300.00 on the remaining counts of conviction. The court also ordered Shellef to forfeit about $1.1 million in money and property. Judgment was formally entered on February 28, 2011, and this timely appeal followed.

## II.    Discussion

Shellef appeals his conviction on a single ground: the district court's purported failure to afford him a retrial within the time prescribed by the Speedy Trial Act. See 18 U.S.C. § 3161(e). Shellef insists that the prescribed time was 70 days because Judge Platt's actions on April 10, 2008, were inadequate to support a statutory extension of up to 180 days, and Judge Bianco could not make the requisite findings for extension after the initial 70-day period had elapsed. Shellef argues that he was not tried within 70 unexcluded days of this court's March 4, 2008 mandate because Judge Platt's actions at the April 10 conference were

inadequate to manifest a contemporaneous exclusion for complexity pursuant to 18 U.S.C. § 3161(h)(7)(A), (B)(ii), which could not, in any event, be open ended, see United States v. Gambino, 59 F.3d 353, 358 (2d Cir. 1995). Shellef further argues that, even if the prescribed time for retrial were found to be 180 days, he was not tried within that time because Judge Bianco erred in treating various time periods as excludable.

Insofar as these issues challenge the construction of the Speedy Trial Act, they present questions of law that we review de novo. See United States v. Lucky, 569 F.3d at 106. Insofar as they challenge the district court's identification of periods of exclusion under the statute, we review the district court's findings of relevant facts only for clear error, but we review the application of the Speedy Trial Act to those facts de novo. See United States v. Simmons, 786 F.2d 479, 483 (2d Cir. 1986). Applying these principles, we conclude that three rulings suffice to resolve this appeal. First, the findings necessary to extend the prescribed period for retrial from 70 to 180 days under 18 U.S.C. § 3161(e) can be made after the initial 70-day period for retrial has passed. Second, the factors relied on by Judge Bianco in granting an extension to 180 days "result[ed] from passage of time," 18 U.S.C. § 3161(e), insofar as they reflected changed circumstances between the close of the original trial and the grant of the extension affecting retrial. Third, Judge Bianco correctly identified sufficient excludable delay to support the conclusion that Shellef was retried within 180 days of this court's mandate. Accordingly, we affirm the judgment of conviction without needing to decide whether the April 10, 2008 record is itself sufficient to support either a § 3161(e)

14

extension to 180 days or a continuance pursuant to § 3161(h)(7) that renders timely Shellef's

retrial within 70 unexcluded days of mandate.

 A. The Speedy Trial Act Does Not Place a Limitation on the Time Within Which a District Court May Grant a § 3161(e) Extension for Retrial

The provision of the Speedy Trial Act relevant to retrial states:

> If the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final, except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical.

18 U.S.C. § 3161(e) (emphasis added). Shellef argues that the highlighted language must be

construed to require that any extension of time be granted only within the initially prescribed

70-day period for retrial. He submits that after that 70-day period passes, a district court is

not empowered to make the impracticality findings necessary to support an extension up to

180 days. The question is one of first impression in this court. Moreover, none  our sister

circuits appears to have answered it directly.[4]  We here construe § 3161(e) to place no

---

[4] In United States v. Holley, 986 F.2d 100 (5th Cir. 1993), a case in which the district court originally extended retrial beyond 70 days pursuant to a § 3161(h)(7) continuance, only later to amend its order to indicate that the extension was pursuant to § 3161(e), the issue on appeal appears to have been the basis for the district court's § 3161(e) ruling, not its timing, see id. at 103.

In United States v. Goetz, 826 F.2d 1025 (11th Cir. 1987), the Eleventh Circuit did not specify whether the district court had granted a § 3161(e) extension before or after passage of the initial 70-day period in concluding that defendant could not complain that the extension "violated the express terms of the Speedy Trial Act" because "the government filed its motion within the initial time limit provided in section 3161(e)," id. at 1027.

The United States District Court for the District of Columbia has considered the question here at issue and, upon review of the text and purpose of § 3161(e), concluded that

temporal limit on a district court's authority to extend the time for retrial up to 180 days. Accordingly, we conclude that § 3161(e) extensions may be granted even after the initially specified 70-day period for retrial has passed, provided that the requisite impracticality finding is based on factors arising before or within that initial period.

"Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." Cruz-Miguel v. Holder, 650 F.3d 189, 195 (2d Cir. 2011) (internal quotation marks omitted); see Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). The language of § 3161(e) plainly authorizes district courts to extend the time for retrial to as much as 180 days in specified circumstances. No language in § 3161(e), however, states when a district court may grant such extensions or when it must make the necessary supporting findings. Nor does any statutory language state that the district court's extension authority is limited to the initial 70-day period for retrial.

Shellef nevertheless urges us to infer such a limitation from Congress's use of the future tense in the statutory phrase specifying the circumstances warranting extension: "if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical." 18 U.S.C. § 3161(e) (emphasis added). As we understand Shellef's argument, a court can only find that factors "shall make" trial within 70 days impractical if it makes the finding before expiration of the 70 days. Any finding after 70

_____

an extension of the speedy-trial clock under that provision is authorized "after the initial seventy-day period has elapsed." United States v. Ginyard, 572 F. Supp. 2d 30, 36 (D.D.C. 2008).

16

days would require a different verb tense: a court would then have to find that the specified factors "made" or "have made" trial within the initial 70 days impractical. Shellef submits that Congress's failure to use these alternative tenses indicates its intent to cabin the exercise of district courts' § 3161(e) extension discretion to the initial 70-day period. We are not persuaded.

While "shall make" is language that looks to the future rather than the past, the verb's subject is not the district court but "factors resulting from passage of time." In this context, Congress's use of the future tense is properly understood to signal that it is not necessary to wait a full 70 days before granting an extension of retrial, i.e., until there can be no doubt that factors "made" or "have made" retrial within that period impractical. Rather, extension may be granted as soon as it is evident that factors "shall make trial within seventy days impractical." 18 U.S.C. § 3161(e). We do not understand a verb choice that permits a district court to grant an extension based on reasonable future certainty to foreclose it from doing so based on past actuality. Indeed, in any number of circumstances, the reason a court can conclude early into the initial retrial period that certain factors "shall make" retrial within 70 days impractical is that the factors already "have made" it so. In short, use of the future tense for specified factors to render retrial within 70 days impractical indicates that the factors themselves must arise before or within the 70-day period, and not thereafter. But it says nothing about when a district court must find such circumstances.

17

Had Congress intended to place such a temporal limitation on the exercise of district court extension authority, one would expect it to have done so not through a tense choice for the verb applicable to factors that can demonstrate impracticality, but through a qualifier on the verb authorizing judicial action, as for example, "except that the court retrying the case may, within the initial seventy-day period for retrial, extend the period for retrial not to exceed one hundred eighty days." See generally 18 U.S.C. § 1514(a)(2)(C) ("A temporary restraining order issued under this section shall expire at such time, not to exceed 14 days from issuance, as the court directs; the court, for good cause shown before expiration of such order, may extend the expiration date of the order for up to 14 days or for such longer period agreed to by the adverse party."); 28 U.S.C. § 2107(c) ("The district court may, upon motion filed not later than 30 days after the expiration of the time otherwise set for bringing appeal, extend the time for appeal upon a showing of excusable neglect or good cause."); Fed. R. App. P. 4(a)(6) ("The district court may reopen the time to file an appeal for a period of 14 days after the date when its order to reopen is entered . . . ."). In the absence of any such language temporally limiting the exercise of judicial discretion, we identify no statutory basis for holding that a court may identify the "factors resulting from passage of time [that] shall make trial within seventy days impractical" only within the initial 70-day period. 18 U.S.C. § 3161(e); see United States v. Ginyard, 572 F. Supp. 2d 30, 36 (D.D.C. 2008).

Shellef maintains that, even if the text of § 3161(e) does not plainly support a temporal limitation on judicial authority to grant extensions of retrial, we should preclude

18

retrospective findings of impracticality to safeguard against the risk, noted in United States v. Tunnesson, 763 F.2d 74 (2d Cir. 1985), that district courts will "simply rationalize [their] action[s] long after the fact, in order to cure an unwitting violation of the Act," id. at 78. This argument is unpersuasive for several reasons.

First, it rests on the unfounded assumption that district courts will act in bad faith in making impracticality findings after the initial 70-day period. Our precedent is to the contrary. "We assume that district court judges apply the law faithfully," and we refuse to interpret rules and statutes "based on a contrary assumption." Transportes Navieros y Terrestres S.A. de C.V. v. Fairmount Heavy Transp. N.V., 572 F.3d 96, 109 (2d Cir. 2009); see United States v. Ginyard, 572 F. Supp. 2d at 36 (identifying "no meaningful reason to distinguish between a finding on the sixty-ninth day of the speedy trial clock that trial is impractical and the same finding made on the seventy-first day").

Second, when we noted a rationalization concern in Tunnesson, a case holding that continuances in the interests of justice pursuant to 18 U.S.C. § 3161(h)(7) could be granted only prospectively, we did so in dictum, having already concluded that the statutory text and legislative history of § 3161(h)(7) plainly expressed Congress's intent for such grants to be only prospective. See United States v. Tunnesson, 763 F.2d at 76–77 (citing S. Rep. No. 93-1021, at 21, 39 (1974)). Indeed, the language used to signal this intent specifically limits courts' authority to act other than prospectively. It states that no "period of delay resulting from a continuance granted by the court in accordance with this paragraph shall be

19

excludable under this subsection <u>unless the court</u> sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A) (emphasis added); <u>see</u> <u>Zedner v. United States</u>, 547 U.S. 489, 506 (2006) (holding statutory text clear that "findings must be made, if only in the judge's mind, before granting the continuance"); <u>United States v. Tunnessen</u>, 763 F.2d at 78 (observing that while district court need not state "precise reasons" for its decision at time continuance is granted, "prospective statement that time will be excluded based on the ends of justice serves to assure the reviewing court that the required balancing was done at the outset"). Section 3161(e) contains no limiting language comparable to § 3161(h)(7)(A)'s phrase "unless the court" that signals Congress's intent to limit the exercise of judicial extension discretion. As already noted, the phrase "factors resulting from passage of time shall make trial within seventy days impractical," 18 U.S.C. § 3161(e), indicates only that the factors must arise within the 70-day period, not that the court must make its findings within that period. Nor has Shellef pointed us to any support for his urged construction in the legislative history for § 3161(e).

Third, a further reason not to transfer any concern with <u>post hoc</u> rationalizations for § 3161(h)(7) continuances to § 3161(e) extensions is an important distinction between the two provisions. The Speedy Trial Act itself places no time limit on § 3161(h)(7) continuances; by contrast, it caps § 3161(e) extensions at 180 days. Thus, the possibility

20

that post hoc rationalizations could excuse 8-, 10-, or 12-month (or longer) periods of pretrial delay pursuant to § 3161(h)(7) simply does not arise with respect to § 3161(e) extensions. Any delay beyond the 180-day limit of § 3161(e) can be justified only by reference to the "precisely defined" automatic exclusions of § 3161(h)(1)-(6), or by procurement of a prospective exclusion pursuant to § 3161(h)(7). United States v. Tunnessen, 763 F.2d at 76. Further, § 3161(h)(7) continuances depend upon a balancing of myriad factors, whereas § 3161(e) extensions turn on the answer to a single question: do specified factors arising before or within 70 days of the mandate render retrial during that period impractical? While the latter determination requires an exercise of judgment, because it is more narrowly focused, there is less risk that an answer given on the 71st day (or even the 171st day) will differ from an answer given on the 69th day. See United States v. Ginyard, 572 F. Supp. 2d at 36.

Thus, we conclude that neither the statutory text nor unwarranted concerns about the conduct of district courts support construing 18 U.S.C. § 3161(e) to limit the exercise of a district court's extension discretion under that provision to the initial 70-day period for retrial. What the statute requires is that the statutorily specified factors supporting extension arise within the 70-day period and make trial within that period impractical. Accordingly, Shellef's argument that Judge Bianco was precluded by § 3161(e) from extending the time for his retrial to 180 days after passage of the initially prescribed 70-day period fails on the merits.

That being said, no one is well served by delaying § 3161(e) determinations until long after the initial 70-day period for retrial has passed. The parties and the court have a strong interest in knowing sooner rather than later whether speedy trial calculations are controlled by a 70-day limit or some longer period up to 180 days. Thus, where factors make it impractical to retry a case within the originally prescribed 70-day period, the "best practice" is for district courts to make that finding and to grant any appropriate extension within, or soon after, the initial 70-day period for retrial. See generally Zedner v. United States, 547 U.S. at 507 & n.7 (observing, with respect to continuances in interests of justice, that although Speedy Trial Act is ambiguous as to when district court must put supporting findings on record, "best practice" is for court to do so "at or near the time when it grants the continuance").

B.     The District Court's Grant of a § 3161(e) Extension Was Supported by Factors Resulting from the Passage of Time

Shellef argues that even if Judge Bianco was authorized to extend the time for retrial after the initial 70-day retrial period had passed, the judge erred in relying on factors that did not "result[] from [the] passage of time" to support the conclusion that trial within 70 days was impractical. 18 U.S.C. § 3161(e). We identify no such error.

The Speedy Trial Act does not itself provide standards for determining when a factor results from the passage of time or even when such a factor renders trial impractical. This suggests that Congress intended to afford experienced trial judges considerable discretion in making such determinations. Consistent with this view, our sister circuits, when confronted

22

with challenges to whether factors supporting a § 3161(e) extension resulted from the passage of time, have been inclined to conduct case-by-case review rather than to make categorical pronouncements. Thus, in United States v. Holley, the Fifth Circuit upheld a § 3161(e) extension based on "factors resulting from passage of time" that limited the availability of a judge to retry the case within the initial 70-day period. See 986 F.2d at 103 (noting that district judge to whom case was assigned was in midst of seven-week trial at time of remand, resident judge in courthouse where case was to have been tried had recused himself, and district was short four of ten authorized judgeships). The Eleventh Circuit concluded in United States v. Goetz that the government's need to investigate defendant's further tax violations since the original indictment was a factor supporting a § 3161(e) extension. See 826 F.2d at 1027–28. In unpublished decisions, the Fourth Circuit identified as factors resulting from the passage of time making trial within 70 days impractical (1) co-defendant's counsel's need to review extensive materials from the first trial of a complex case, (2) both defense counsels' scheduling conflicts, and (3) the government's need to locate witnesses who had been released from custody since the first trial, see United States v. Aboh, 145 F.3d 1326, 1998 WL 196612, at *1–2 (4th Cir. Apr. 22, 1998) (unpublished); while the Ninth Circuit cited the unavailability of the original prosecutor, the unknown whereabouts of the original case agent and confidential informant, and missing case files, as factors resulting from the passage of time that made retrial within 70 days impractical, see United States v. Hernandez-Urena, 35 F.3d 572, 1994 WL 502638, at *4 (9th Cir. Sept. 13, 1994) (unpublished).

23

At the same time, the Ninth Circuit, in dictum, indicated that "routine" scheduling conflicts and plea negotiations cannot, by themselves, be viewed as factors resulting from the passage of time making retrial within 70 days impractical. See United States v. Pitner, 307 F.3d 1178, 1185 n.6 (9th Cir. 2002). And the Tenth Circuit, in United States v. Scalf, 760 F.2d 1057 (10th Cir. 1985), ruled that § 3161(e) does not apply so broadly as to warrant treating time spent by the government deciding whether to petition for a writ of certiorari from the original remand decision as a factor resulting from the passage of time that makes speedy trial impractical, see id. at 1059.

We need not—and, in the absence of full record review of each case, could not—here decide whether we agree with each of these rulings. Like our sister circuits, however, we can conclude that identifying factors resulting from the passage of time and determining whether they render trial within 70 days impractical is generally a case-specific inquiry, on which, to the extent it turns on findings of fact, we will defer to the district court absent clear error.

Here, Judge Bianco found that retrial within 70 days of remand was impractical for several reasons, including: (1) the original complexity of the case had been aggravated on remand by the need to sever charges and defendants into three separate trials; (2) following remand, but before expiration of the initial 70-day period for retrial, an intervening Supreme Court decision, see Cuellar v. United States, 553 U.S. 550 (2008), altered proof requirements with respect to money laundering charges against Shellef; and (3) the case had been twice reassigned to different judges on remand, requiring each to become familiar with the record from the previous trial and the legal issues involved.

24

Shellef argues that, even if there is factual support in the record for these factors, the district court erred as a matter of law in concluding that they were attributable to the "passage of time." He submits that the factors were attributable to court rulings or local rules, which do not derive from the passage of time as required to support a § 3161(e) extension. This construes § 3161(e)'s passage-of-time requirement too narrowly.

To begin, the requirement must be viewed in the context of § 3161(e) as a whole. See Robinson v. Shell Oil Co., 519 U.S. at 341. Section 3161(e) manifests Congress's intent to afford more, rather than less, flexibility in the time afforded to retry a case. See United States v. Holley, 986 F.2d at 103 ("Section 3161(e) gives the trial court greater flexibility in setting cases for trial following appeal than is provided in the initial indictment-to-trial cases."). Thus, at the same time that § 3161(e) states that all "periods of delay enumerated in section 3161(h)" for exclusion in computing time limitations for trial shall also be "excluded in computing the time limitations specified [for retrial]," the provision affords district courts added discretion with respect to retrials that does not pertain to initial trial: the ability to "extend the period [of unexcluded time] for retrial" from 70 to 180 days "if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical." 18 U.S.C. § 3161(e). To be sure, the qualifying language indicates that judicial extension authority is not unbounded. Moreover, Congress's use of the word "resulting" in the qualifying passage signals the need for a causal link between the factor identified and the passage of time. We do not, however, understand Congress to be requiring "but for" causation. Rather, the statutory nexus requirement is satisfied if a factor

25

rendering retrial within 70 days impractical results from a change in circumstances occurring some time between conclusion of the original trial and expiration of the initial 70-day retrial period.[5]

Here, each of the three factors relied on by Judge Bianco reflects changes in circumstances between the original trial and the expiration of the 70-day retrial period that specifically related to the practicality of retrying Shellef within 70 days of remand. In urging otherwise, Shellef particularly challenges Judge Bianco's reliance on the complexity of the case on remand. He submits that once a complex case has been tried, a remand order for retrial presents no reason for an extension of time from 70 to 180 days. Assuming that such a conclusion is warranted in some cases, it is not warranted here. The Shellef I remand order did not simply direct the government to retry its original complex case; rather, it required the government to deconstruct that complex case and reassemble it into three distinct trial presentations. No one suggests that, in these circumstances, it would have been practical to try all three cases within 70 days of our mandate. Nor do we identify any error in the district court's determination that it would have been impractical to try even Shellef's case within that time. In addition to having to restructure its original case into new trial presentations,

---

[5] To illustrate, evidence may be lost in the interim between original trial and retrial for any number of reasons, some resulting more directly from the "passage of time" than others, for example, an agency policy for destruction after a fixed number of years as compared to a theft or fire, the timing of which is completely coincidental. We do not construe § 3161(e) to treat these differently. In each, the loss of evidence reflects a change in circumstances between the time of the original trial and the end of the 70-day period for retrial that may warrant affording an extension if the location of substitute evidence within 70 days is impractical.

26

the government confronted a new legal challenge: the disputed question of whether another grand jury presentation was required before any trial could be pursued. The district court correctly recognized that these circumstances injected new complexities into the case that arose only after the original trial. As such, they reasonably qualify as "factors resulting from passage of time," and thus properly informed the district court's impracticality determination and supported its grant of an extension of time beyond the prescribed 70 days. Furthermore, that added complexity resulting from the passage of time might also support a continuance under § 3161(h) does not compel a narrower construction of § 3161(e) given Congress's intent to afford more flexibility on retrial than on the initial trial. We leave it in the first instance to the good sense of district judges to ensure that factors that might support both a § 3161(e) extension and a continuance under § 3161(h) do not result in duplicative exclusions of time from speedy trial calculations.

Insofar as Cuellar v. United States, 553 U.S. at 568, altered the government's burden of proof on the money laundering charges pending against Shellef, the district court was entitled to view that decision, issued on the 70th day following the mandate, as another new factor resulting from the passage of time that made it impractical to commence trial without affording the parties and the court some additional time to familiarize themselves with the ruling and its effect on retrial.[6]

---

[6] We note that although Cuellar issued on June 2, 2008, 91 days after our March 4, 2008 mandate, the 70-day period for retrial had not yet expired because 21 of these days were automatically excluded for reasons discussed in the next section of this opinion.

Finally, the district court correctly recognized that reassignments of this case after issuance of the mandate, first pursuant to local rule and thereafter by order of this court, to two different judges made it impractical to retry the case without affording each judge some additional time to familiarize himself with the complex factual scenario and the various legal questions that could arise.

Shellef suggests that, even if these factors support some § 3161(e) extension, they do not support an extension to 180 days, the maximum allowed by law. This is a curious argument to advance on a record that so strongly indicates that Shellef himself would not have been able to proceed to trial within any shorter time given his professed dissatisfaction with counsel of record and his delay in securing new counsel. No matter. In the absence of legal error in the recognition of factors warranting a § 3161(e) extension, we will not readily second-guess a district judge's assessment of the proper duration of the extension that should be granted. Given the record support for Judge Bianco's identification of at least three factors supporting extension, we identify no abuse of discretion in his determination that, together, these factors warranted an extension of the time for retrial to 180 days.

C.      Shellef Was Tried Within 180 Unexcluded Days of this Court's Mandate

Shellef submits that various errors in the district court's calculation of excludable time infect its conclusion that his retrial commenced within the extended 180-day period. Specifically, he contends that Judge Bianco erred in deeming automatically excluded pursuant to 18 U.S.C. § 3161(h)(1)(D) the 52 days from June 3, 2008, through July 24, 2008, when Shellef's first speedy trial motion was pending before Judge Platt, as well as the

28

preceding 15 days, from May 19, 2008, through June 3, 2008, when the government's motion to set trial dates was pending. He further challenges Judge Platt's conclusion that his April 10, 2008 actions satisfied the requirements of 18 U.S.C. § 3161(h)(7)(A), (B)(ii) for granting a continuance in the interests of justice based on the complexity of the case. We need only explain why we reject the first two arguments to affirm the challenged judgment.

### 1. Shellef's Speedy Trial Motion

The Speedy Trial Act states that certain periods of delay "shall be excluded in computing the time within which" trial or retrial must be commenced. 18 U.S.C. § 3161(h). Among these automatic exclusions is any period of delay "resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D); see id. § 3161(e) (specifying that § 3161(h) periods of delay apply in computing time limitations for retrial). Despite the text's employment of language that is both mandatory—"shall be excluded"—and expansive—"any pretrial motion"—Shellef maintains that § 3161(h)(1)(D) does not apply to motions seeking dismissal based on a violation of the Speedy Trial Act. In support, he cites United States v. New Buffalo Amusement Corp., 600 F.2d 368 (2d. Cir. 1979), a case arising under an interim court plan for speedy trial that, by reference, adopted the automatic exclusions of the Speedy Trial Act, see U.S. Dist. Ct., W.D.N.Y. Plan for Prompt Disposition of Criminal Cases ("W.D. Plan").[7] In that context, New Buffalo concluded, without reference to the

---

[7] Because the Speedy Trial Act provided a delayed effective date for certain provisions, see 18 U.S.C. § 3163, the Act required district courts to create interim plans "for

29

express language of either the plan in question or the Speedy Trial Act, that "[d]elay occasioned by [the] pendency <u>sub judice</u> of appellants' speedy trial motion is not chargeable against appellants because . . . to do so would 'improperly penalize defendants for their invocation of speedy trial rules and run counter to the purposes of those rules.'" <u>United States v. New Buffalo Amusement Corp.</u>, 600 F.2d at 375 (quoting <u>United States v. Didier</u>, 542 F.2d 1182, 1188 (2d Cir. 1977)).

As Shellef acknowledges, in <u>United States v. Bolden</u>, 700 F.2d 102 (2d Cir. 1983), a subsequent case construing the Speedy Trial Act itself, this court specifically rejected the argument that "a motion to dismiss on speedy trial grounds should be treated differently from other pretrial motions" for purposes of applying the Act's automatic exclusion for pretrial motion delay, <u>id.</u> at 102–03. <u>Bolden</u> concluded that such an exception would "run[] against the statutory language, which establishes a period of excludable time for '<u>any</u> pretrial motion.'" <u>Id.</u> at 103 (emphasis in original). Although <u>Bolden</u> did not reference <u>New Buffalo</u>, it effectively rejected its premise, <u>i.e.</u>, that it was "anomalous to have a 'speedy trial' motion delay the time when a trial must commence," as a basis for departing from the plain language of the Speedy Trial Act's pretrial motion exclusion. <u>Id.</u> <u>Bolden</u> explained:

> Calculations under the Act are not necessarily related to the actual commencement of the trial, but only to the final date by which the trial must commence. . . . Moreover, the delay resulting from a speedy trial motion is no different from that resulting from any other pretrial motion. Finally, by

the disposition of criminal cases in accordance with this chapter," <u>id.</u> § 3165; <u>see also</u> H.R. Rep. 93-1508 (1974), <u>reprinted in</u> 1974 U.S.C.C.A.N. 7401, 7414 (discussing phase-in period).

30

establishing in the Speedy Trial Act automatically excludable periods for pretrial motions, Congress assured reasonable opportunities to the government for response, as well as to the court for serious consideration of every claim that a defendant might assert by motion. An opportunity to be heard and due deliberation are as necessary for a speedy trial motion as for any other motion.

Id.

With no discussion, Shellef conclusively asserts that Bolden was wrongly decided. We disagree. Bolden's holding is dictated by the plain language of the Speedy Trial Act, which mandates the automatic exclusion —without limitation—of "delay resulting from any pretrial motion." 18 U.S.C. § 3161(h)(1)(D) (emphasis added); see Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 254 (1992) ("When the words of a statute are unambiguous . . . judicial inquiry is complete."). Further, Bolden's explanation for the application of this exclusion to speedy trial motions is only reinforced by the fact that a defendant who makes a meritorious speedy trial motion will, in fact, suffer no delay in trial attributable to the exclusion because he will secure dismissal. See 18 U.S.C. § 3162. Such a complaint can be voiced only by a defendant who has made a non-meritorious speedy trial motion. A defendant can hardly be heard to complain when the delay necessary to demonstrate that his speedy trial motion lacked merit is subjected to the same exclusion as every other pretrial motion, including meritorious defense filings. Finally, every one of our sister circuits to have considered the question has construed the Speedy Trial Act's automatic exclusion for pretrial motion delay to apply to speedy trial motions. Indeed, several have done so by citing approvingly to Bolden. See United States v. Brown, 736 F.2d 807, 809–810 (1st Cir. 1984)

31

(citing Bolden); United States v. Parker, 30 F.3d 542, 548 (4th Cir. 1994); United States v. Tedesco, 726 F.2d 1216, 1221 (7th Cir. 1984) (recognizing conflict between New Buffalo and Bolden and agreeing with Bolden); United States v. Thompson, 866 F.2d 268, 273 (8th Cir. 1989) (citing Bolden); Furlow v. United States, 644 F.2d 764, 768 (9th Cir. 1981); United States v. Rogers, 921 F.2d 975, 983–84 (10th Cir. 1990); United States v. Stafford, 697 F.2d 1368, 1372–73 (11th Cir. 1983); United States v. Wilson, 835 F.2d 1440, 1444 (D.C. Cir. 1987) (citing Bolden), overruled on other grounds by Bloate v. United States, 559 U.S. 196 (2010).

Shellef nevertheless submits that we are here obliged to follow New Buffalo rather than Bolden because the earlier of two conflicting panel decisions must control until the former is overruled by this court en banc or by the Supreme Court. See Jones v. Coughlin, 45 F.3d 677, 679 (2d Cir. 1995); accord Shipping Corp. of India Ltd. v. Jaldhi Overseas Pte Ltd., 585 F.3d 58, 67 (2d Cir. 2009) (noting that panel generally may not "reverse an existing Circuit precedent"). The principle does not apply here because, as we have already observed, New Buffalo's ruling was pronounced in a case involving a court speedy trial plan. Although that plan incorporates, by reference, the Speedy Trial Act's automatic exclusion provisions, it does so in language that places more emphasis on the fact that no exclusions beyond those in § 3161(h) will be considered than on the automatic application of such exclusions. Compare W.D. Plan Rule 10 "Exclusion of Time from Computation" ("In computing any time limit under section 3, 4, 5, 6, or 7, only the periods of delay set forth in 18 U.S.C. § 3161(h) shall be excluded.") with 18 U.S.C. § 3161(h) ("The following periods of delay

shall be excluded in computing the time within which an information or an indictment must be filed, or in computing the time within which the trial of any such offense must commence."). In any event, New Buffalo did not purport to construe the Speedy Trial Act itself, much less the specific language here at issue. See 600 F.2d at 372 (resolving defendants' claim that "they were denied their rights to a speedy trial under the various speedy trial plans of the Western District of New York"); see also United States v. McGrath, 622 F.2d 36, 39 (2d Cir. 1980) (noting that defendant's "contentions exclusively involve the period before July 1, 1976, and thus are not at all covered by the Speedy Trial Act"). By contrast, Bolden did just that, ruling that the plain text of § 3161(h) admitted no exception to the mandated exclusion for delay attributable to "any pretrial motion," 700 F.2d at 103. Accordingly, Bolden, and not New Buffalo, controls this appeal.

We therefore reject as without merit Shellef's argument that no delay attributable to his first speedy trial motion was excludable under 18 U.S.C. § 3161(h)(1)(D).[8]

---

[8] Insofar as the district court attributed 52 days of automatically excluded pretrial delay to Shellef's first speedy trial motion, we note a concern. The motion, filed by Shellef on June 3, 2008, appears to have been fully submitted to the district court 17 days later when Shellef's co-defendant joined in the motion on June 19, 2008. From that point, only 30 days of the time the motion was under advisement with the district court qualified for automatic exclusion. See 18 U.S.C. § 3161(h)(1)(D), (H). In short, the speedy trial clock would have begun to run again on July 19, 2008, five days before the district court's July 24, 2008 ruling, resulting in only 47 days of excludable delay.

The matter does not warrant further discussion, however, for two reasons. First, Shellef raised no such objection to the 52-day calculation in his brief on appeal and, thus, we deem it abandoned. See Norton v. Sam's Club, 145 F.3d 114, 117 (2d Cir. 1998). Second, the period July 19–24, 2008, is, in any event automatically excludable under § 3161(h)(1)(D) because of the pendency of the government's motion to set a trial date, discussed in the immediately following section of this opinion.

### 2. Government's Motion To Set Trial Date

Shellef contends that the government's May 19, 2008 motion for the court to set trial dates was not really a "pretrial motion" for purposes of automatic exclusion under 18 U.S.C. § 3161(h)(1)(D), but only a request for the court to perform an obligatory, ministerial task. In support, he cites United States v. Brown, 285 F.3d 959 (11th Cir. 2002), in which the Eleventh Circuit declined to treat a document labeled "Motion for Determination of Speedy Trial Status and/or Trial Setting" as a motion triggering automatic exclusion under § 3161(h)(1)(D). In so holding, Brown explained that the purported motion presented no "dispute" for the court to resolve; rather, the motion only reminded the court of the need to set a trial date to comply with the Speedy Trial Act. Id. at 961–62.

Assuming we were to agree with Brown's reasoning as it might apply to routine scheduling requests, that is not a fair characterization of the government's May 19, 2008 submission. That filing can reasonably be construed to seek court resolution of a legal point in dispute between the parties, i.e., the need to obtain new indictments before proceeding to retrial. At the April 10, 2008 conference, defendants maintained that new indictments were a necessary prerequisite to retrial, and the district court seemed inclined to agree. In almost four single-spaced typed pages supporting its request for setting trial dates without any further grand jury presentation, the government argued that neither the ruling in Shellef I nor law established in this and other circuits supported the defense position. On this record, the letter is properly construed as more than a routine request for scheduling. It is effectively a motion seeking a legal determination, i.e., that the government had the right to proceed to

34

retrial on the original indictment. As such, it was properly deemed to trigger the automatic exclusion for pretrial motions under § 3161(h)(1)(D).

The government maintains that its motion was pending until at least October 29, 2008, when it filed another request to set trial dates. We identify no clear error, however, in Judge Bianco's finding that Judge Platt implicitly denied the government's motion on July 24, 2008, when he observed that speedy trial challenges were premature before new indictments were returned.[9] Accordingly, like the district court, we deem only that period automatically excludable.

### 3.    Speedy Trial Calculation

In deciding whether Shellef was brought to trial within 180 days of this court's March 4, 2008 mandate, we need focus only on the 246 days between the issuance of the Shellef I mandate on March 4, 2008, and the November 4, 2008 bail motion because Shellef concedes the proper exclusion of all time between November 4 and the December 14, 2009 start of retrial. Within the relevant 246-day time frame, we conclude, for the reasons just stated, that 67 days—from May 19, 2008, to July 24, 2008—were automatically excluded pursuant to 18 U.S.C. § 3161(h)(1)(D) due to a combination of the pendency of the government's May 19 motion to set trial dates and Shellef's June 3 motion to dismiss the indictment for violation

---

[9] The government does not, in any event, explain how an automatic exclusion could apply through October 29, 2008, given that the last relevant submission on its May 19, 2008 motion to set trial dates, i.e., its response to the district court's request for proposed redacted indictments, was submitted on July 22, 2008, and 18 U.S.C. § 3161(h)(1)(H) limits excludable delay for time when a motion is under advisement to 30 days.

of speedy trial. Because Shellef does not dispute on appeal the district court's exclusion of another five days from March 28, 2008, to April 1, 2008, when his pretrial bail modification was pending, as well as the single day of the April 10, 2008 pretrial conference, the total number of excluded days to be subtracted from 246 is 73. When this is done, we conclude that Shellef was retried within 173 unexcluded days after this court's mandate and, therefore, within the 180-day extended period for retrial reasonably granted by Judge Bianco.

Accordingly, we conclude that there is no merit to Shellef's claim that his conviction was obtained in violation of his statutory right to a speedy trial.

## III.    Conclusion

To summarize, we conclude as follows:

1. Because 18 U.S.C. § 3161(e) places no temporal limit on a district court's authority to extend the time for retrial up to 180 days, such an extension may be granted after expiration of the original 70-day retrial period as long as it is based on "factors resulting from passage of time" arising within that 70-day period.

2. "[F]actors resulting from passage of time" reference changed circumstances between the conclusion of the first trial and the close of the original 70-day period, which make it impractical to afford retrial within that period.

3. Pursuant to United States v. Bolden, 700 F.2d 102 (2d Cir. 1983), pretrial delay during the pendency of a defendant's motion to dismiss an indictment for a Speedy Trial Act violation is automatically excluded under 18 U.S.C. § 3161(h)(1)(D). United States v. New

36

Buffalo Amusement Corp., 600 F.2d 368, 375 (2d Cir. 1979), which concluded otherwise in the context of a court plan, does not apply to cases controlled by the Speedy Trial Act itself.

4.  Because the government's May 19, 2008 letter requesting the court to set a trial date urged resolution of a disputed question of law in its favor, the district court reasonably characterized it as a "pretrial motion" triggering the automatic exclusion of time under 18 U.S.C. § 3161(h)(1)(D).

5.  In light of these rulings, the district court acted within its discretion in extending retrial to 180 days and in finding that Shellef was retried within 180 non-excludable days of the issuance of this court's mandate.

Accordingly, the judgment of conviction is AFFIRMED.

POOLER, *C.J.*:

I respectfully dissent, because I think it error to conclude that Section 3161(e) permits a district court to retroactively grant continuances for re-trial. The text of Section 3161(e) is silent on the issue of when a district court may identify the factors that make trial within 70 days impractical. However, our Court's speedy trial jurisprudence provides us with a framework that informs the analysis and requires finding Section 3161(e) continuances be granted prospectively.

When a defendant is to be retried following a successful appeal, the Speedy Trial Act (the "Act") provides that:

> the trial shall commence within seventy days from the date the action occasioning the retrial becomes final . . . except that the court retrying the case may extend the period for retrial not to exceed one hundred and eighty days from the date the action occasioning the retrial becomes final if unavailability of witnesses or other factors resulting from passage of time shall make trial within seventy days impractical.

18 U.S.C. § 3161(e). The purpose of the Act is to both protect "the defendant from undue delay in his or her trial" and to "benefit society by ensuring a quick resolution of criminal trials." *United States v. Kelly*, 45 F.3d 45, 47 (2d Cir. 1995).

The Act sets forth a different set of considerations for granting continuances when a defendant is first tried. Some exclusions are counted without the need for judicial intervention, such as the delay from filing a pretrial motion. *See* 18 U.S.C. §§ 3161(h)(1)-(h)(6). Other types of exclusions require judicial findings to take effect, such as a continuance granted to serve the "ends of justice." *See* 18 U.S.C. § 3161(h)(8)(A) (re-codified at Section 3161(h)(7)(A)). An ends-of-justice exclusion is valid only if the district court "sets forth, in the record of the case,

1

either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A).

The seminal ends-of-justice continuance case in this Circuit is *United States v. Tunnessen*, 763 F.2d 74 (2d Cir. 1985). *Tunnessen* holds that ends-of-justice continuances may only be granted prospectively. *Id.* at 76-77. Our Court found the language of statute required that "an order granting a continuance on that ground must be made at the outset of the excludable period." *Id.* A district court need not enter "the precise reasons for the decision," "on the record at the time the continuance is granted," because "[a] A prospective statement that time will be excluded based on the ends of justice serves to assure the reviewing court that the required balancing was done at the outset." *Id.* at 78. In addition to the statutory language, we set out several critical goals served by a prospective grant: (1) "[a] prospective statement that time will be excluded based on the ends of justice serves to assure the reviewing court that the required balancing was done at the outset;" (2) "it puts defense counsel on notice that the speedy trial clock has been stopped," and (3) avoids "the risk that a district judge in a particular case may simply rationalize his action long after the fact, in order to cure an unwitting violation of the Act." *Id.* at 78.

We affirmed our holding in *Tunnessen* in *United States v. Kelly*, 45 F.3d 45 (2d Cir. 1995). There, we found the Act violated where the district court granted a continuance, but articulated only grounds related to the scheduling considerations of counsel, with no reference at all to speedy trial concerns. *Id.* at 47. We held that it was:

> apparent that the district court's *nunc pro tunc* "ends of justice" finding was ineffective to toll the speedy trial clock. This is not, as

the government contends, a case where defense counsel misled or ambushed the court. Rather, the record reflects that an adjournment was granted to accommodate the trial schedules of both counsel and the court, precisely the type of circumstance that triggers the requirement of *Tunnessen* that a contemporaneous ends-of-justice finding be made on the record. We therefore reaffirm our ruling in *Tunnessen* by holding that the district court's retroactive finding that the May 26, 1992 continuance was granted to further the ends of justice was ineffective to create excludable time.

*Id*. at 47.

The majority's conclusion that a Section 3161(e) extension "may be granted even after the initially specified 70-day period for retrial has passed" fails to adequately address these concerns. **Maj. Op. at 16.** The majority ignores the benefit to all parties of notice that the "speedy trial clock has been stopped." *Tunnessen*, 763 F.2d at 78. Retroactive application of Section 3161(e), like retroactive application of Section 3161(h)(8), is inconsistent with the purposes of the Act because it deprives the parties of notice that an extension is being given. Without notice, the parties are unable to object to the extension in a timely fashion and make a record of that objection. *Id.* Lack of notice can never be cured.

While a set 180-day period may not pose the same danger as an open-ended extension under Section 3161(h)(8), it is not without dangers of its own. There is still a substantial risk that "a district judge may . . . simply rationalize his action long after the fact," *Tunnessen*, 763 F.2d at 78. We need not assume, as the majority does, that a district court judge acts in bad faith simply by engaging in post-hoc reasoning. Indeed, here we can assume the district court both acted in good faith and engaged in egregious post-hoc rationalization of its actions. Judge Bianco, who inherited this case after our Court granted a writ of mandamus removing Judge Platt, found that Judge Platt "implicitly" granted an excludable continuance. *United States v.*

3

*Shellef*, 756 F. Supp. 2d 280, 291-92 (E.D.N.Y. 2011). However, the record before our Court amply demonstrates that Judge Platt was operating under the mistaken impression that the speedy trial clock had not yet started ticking because the defendants had not been re-indicted. Judge Platt agreed with Shellef's counsel that defendants needed to be re-indicted before proceeding with re-trial:

> [Counsel]: It seems to me that if [the government's attorney] is talking about if, as he puts it, creating three new indictments, I think he has to go back to the grand jury, and we would not waive that.
>
> [Court]: My stomach says you are right.

Later in the same proceeding, in response to the government's assertion that it would try and schedule time with the grand jury soon, the district court stated, "[y]ou should do it promptly, because I don't know what – well, you get a new indictment and the ball game starts with the new indictment as far as the speedy trial." A few moments later, the district court again indicated new indictments would start the speedy trial clock anew. Finally, the district court flatly stated "[w]e'll start the clock measuring from the date they get arraigned on the new indictment or indictments . . . ."

Even after Shellef moved to dismiss for speedy trial violations, and even after concluding that it had ordered an ends-of-justice exclusion at the April 2008 hearing, the district court stated Shellef's motion was "premature" because the indictments were no longer operative:

> The fact is that the government unquestionably needs time to determine how best to try two separate defendants for their specific offenses which, in light of the Court of Appeals finding of misjoinder, necessarily means that the defendants are not currently facing any charges. Accordingly, any accusations of speedy trial violations would logically appear to be premature. If, as and when one or more of the indictments is returned, this Court will entertain

4

Speedy Trial Act motions.

Judge Bianco found that Judge Platt:

> implicitly extended the time under Section 3161(e) from seventy
> days to 180 days, as he is permitted to do, because it was
> impractical for the case to be tried within the seventy-day period
> (triggered on March 4, 2008) for the reasons identified in detail on
> the record at the April 10, 2008 conference—namely, (1) the belief
> by the court and defense counsel that the government needed to
> re-indict the case in order to comply with the Second Circuit's
> mandate that certain counts be severed for purposes of re-trial; (2)
> the possibility that the government would present new evidence at
> the re-trial; (3) the parties' agreement that the case was complex;
> and (4) the parties' discussion with the court of a potential trial
> date well beyond the seventy-day period. Although it is unclear
> whether Judge Platt was aware of Section 3161(e) and he did not
> explicitly extend the applicable seventy-day period under that
> Section 3161 at that conference, this Court concludes, as discussed
> in detail below, that no explicit finding is required under the plain
> language of the Speedy Trial Act to extend the time under Section
> 3161(e).

*Shellef*, 756 F. Supp. 2d at 291-92.

Finding a different district court judge who explicitly stated that the speedy trial clock had not yet begun to run somehow "implicitly" extended time pursuant to Section 3161(e) demonstrates the dangers of a retroactive grant of continuances. It will always be possible to search the record and find that there were factors that "make trial within seventy days impractical." 18 U.S.C. § 3161(e). To do so eviscerates the Act's underlying purpose and goals. That is especially true where the record shows Judge Platt believed the speedy trial clock had not yet begun to run, no parties moved for a continuance, no extension of time was made on the record, and no trial date was set that would indicate time was being extended beyond the seventy days.

For the reasons given above, I respectfully dissent.  I would therefore remand to the district court to determine if the case should be dismissed with or without prejudice.  *See, e.g., Tunnessen*, 763 F.2d at 79.