FILED
United States Court of Appeals
Tenth Circuit

June 18, 2009

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

MICHAEL JOHN SMITH,

Defendant-Appellant.

No. 08-8019

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 2:07-CR-00125-CAB-1)**

---

Henry F. Bailey, Jr., Bailey Stock & Harmon, Cheyenne, Wyoming (Jared S. Crecelius, Bailey, Stock & Harmon and Ronald Petty, Cheyenne, Wyoming, with him on the brief), for Defendant-Appellant.

Gregory Davis, United States Department of Justice, Washington, D.C. (Nathan J. Hochman, Assistant Attorney General, Alan Hechtkopk and Elissa Hart-Mahan, Tax Division, Department of Justice, Washington, D.C., with him on the brief), for Plaintiff-Appellee.

---

Before **TACHA**, **O'BRIEN** and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

After a jury trial, Michael John Smith was convicted on counts of tax

evasion, submitting fictitious obligations, and making a false oath and a false

declaration in relation to a bankruptcy petition. He was sentenced to three years in prison followed by three years of supervised release, and he was ordered to pay nearly $500,000 in restitution.

He appeals his conviction, claiming a violation of the Speedy Trial Act and that the district court abused its discretion by allowing jurors to question witnesses. We affirm.

## I. Facts

Mr. Smith made his initial appearance on June 6, 2007. On June 14, 2007, he filed two motions to dismiss, a motion for a bill of particulars, and a motion for continuance.[1] After many more motions, the government moved on October 1 for a status hearing for purposes of scheduling a trial. The status hearing was held October 16.[2] At the status hearing, the court heard argument on Mr. Smith's two June 14 motions to dismiss and denied them both. The court then set trial for the week of December 10.

Before trial could commence, even more motions (a "flurry," to use Mr. Smith's word) were filed. Aplt. Br. 12. Of primary importance to this appeal was Mr. Smith's motion to dismiss, filed January 22, 2008 and alleging a

---

[1] The defendant also filed a motion waiving his right to a speedy trial. Mr. Smith argues, and the government concedes, that such a waiver is ineffective. We agree with the government that this supposed waiver did not play any material role in any of the district court's reasoning, and so do not address it here.

[2] The date on the transcript for the hearing is October 17, 2007, but this appears to be a typographical error. *See* Aplt. App. 77.

violation of his constitutional right to a speedy trial under the Speedy Trial Act, 18 U.S.C. § 3161.  Specifically, Mr. Smith argued that the time between his June 14 motions and the eventual disposition of those motions at the October 16 hearing should have been counted in calculating how many days lapsed from his appearance to the date of his trial.  The court disagreed, explaining that because it held a hearing on the motions, the time between the filing of the motions and the hearing was excludable under the Speedy Trial Act.  Dist. Ct. Op. 2.  The trial eventually commenced on February 25, 2008.

During the trial, a juror twice submitted questions to the court, which the court then asked to witnesses.  Counsel for Mr. Smith objected to the practice, but his objections were denied.  At one point in the trial, when a witness was searching for a word, a juror said "electronic filing."  Aplt. App. 137.  Mr. Smith's counsel moved for a mistrial on the grounds that there was inappropriate contact between a juror and the witness.  The motion was denied.

Mr. Smith, having been convicted, now appeals.

## II.  Speedy Trial Act

Under the Speedy Trial Act, "[i]n any case in which a plea of not guilty is entered, the trial of a defendant charged in an information or indictment with the commission of an offense shall commence within seventy days from the filing date."  18 U.S.C. § 3161(c)(1).  However, there are some days which can be excluded from the overall limit of seventy days until trial.  The amount of time

occupied by consideration of pre-trial motions depends on whether the motions entail a hearing. If there is a hearing on the motion, the period of excludable delay extends from the time the motion is filed "through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161 (h)(1)(D). If not, the excludable period is the time "reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court." 18 U.S.C. § 3161 (h)(1)(H).[3]

The district court denied Mr. Smith's motions to dismiss 124 days after they were filed, and did so after conducting a brief hearing. Mr. Smith urges that this time should not be excluded, because the motions to dismiss could and should have been promptly disposed of without a hearing. Accordingly, he contends that only thirty of the 124 days during which the pretrial motions were pending are properly excludable, meaning that the total unexcluded delay in his trial exceeded the statutory seventy days. We review a trial court's denial of a motion to dismiss for violation of the Speedy Trial Act for an abuse of discretion. *United States v. Lampley*, 127 F.3d 1231, 1244 (10th Cir. 1997).

Mr. Smith at first appears to claim that this "hearing" really did not amount to a *hearing*. At the conference, he writes in his brief, "the motions were briefly

---

[3] The numbering of the Speedy Trial Act has changed since Mr. Smith's trial, but there were no changes made in the language of parts of the Act relevant to the appeal. We cite to the most recent version of the Act.

discussed.  No additional documents were produced and very little argument was made."  Aplt. Br. 25; *see also id.* at 24 (saying that if this Court finds that the motions were disposed of at a hearing, "then the Act was not violated," but "if they weren't disposed of at a hearing, then the Act was violated.").  This argument is not persuasive.

If a status conference is marked by "oral argument" and "legal rulings," *United States v. Barnes*, 159 F.3d 4, 12 (1st Cir. 1998), it is safe to call it a hearing.  Whether to conduct a hearing is in the sound discretion of the district court, and if a hearing is conducted, the time until the hearing is excluded under the Speedy Trial Act.[4]  We cannot allow Speedy Trial Act calculations to turn on post hoc qualitative judgments about the difficulty of the issue raised or the need for a hearing.  Whether or not a hearing is really a "hearing" need not depend on the length of the discussions between the court and the lawyers or the number of documents submitted; a hearing need only be as long, or as exhaustive, as is necessary to dispose properly of the issues presented.

The facts of this case provide a useful example.  Mr. Smith's first motion to dismiss was based on a contention that some of his acts were protected by the First Amendment.  Aplt. App. 20–21.  Such constitutional claims must be taken

---

[4] We do not discount the theoretical possibility that in some case, a defendant might be able to make a showing that the district court scheduled a "hearing" as a mere pretense to excuse delay in bringing a case to trial.  This would perforce be difficult to prove, and the facts of this case provide no basis for so extreme a claim.

seriously. Accordingly, at the hearing the court asked defense counsel: "What you do in your motion to dismiss, you admit the truth of the Government allegations, but deny that they constitute allegations of a crime?" Mr. Smith's counsel replied, "I have to confess that there are certain of these allegations which, if they were true, would constitute an allegation of — would be sufficient to be a crime, so I think I probably ought to withdraw that motion." Aplt. App. 63. The court replied that it was too late to withdraw the motion, but that, in any case, it was denied. It is easy to say, in hindsight, that no hearing was required on this motion, because counsel withdrew it almost immediately. But that is hindsight; the district court had no way to know that the defense was filing motions to dismiss so spurious that they would be withdrawn upon the slightest questioning. It would be strange to interpret the Speedy Trial Act as requiring dismissal of an indictment whenever the defendant files a pre-trial motion and then retracts it at a hearing held more than seventy days later.

Mr. Smith also argues that the October 16 conference was merely a scheduling conference and was not understood at the time as a "hearing" on the motions to dismiss. We cannot agree. Again, we do not regard it as useful or appropriate to plumb the subjective intentions of the court or the parties. If there was argument and a ruling, there was a hearing. But we also reject the factual premise of this argument. The district judge began the proceeding on October 16 by saying "I believe that we're going to do everything we can do today, in

addition to doing a little scheduling." Aplt. App. 57. The court then turned to Mr. Smith's June motion for a bill of particulars. Mr. Smith's counsel did not object to having everything, including his prior motions, on the table. It was clear to everyone present that this was more than just a scheduling conference.

Mr. Smith makes an additional, and much more interesting, argument—that the kinds of motions before the court did not *require* a hearing for their disposition, and so that it was an abuse of discretion for the court to hold a hearing on them. Aplt. Br. 25. In *Henderson v. United States*, 476 U.S. 321, 329 (1986), the Supreme Court made a distinction between those motions that, in its words, "require no hearing" and those that require a hearing. If a motion *required* no hearing, the Court held, it is covered by the part of the Speedy Trial Act which allows an exclusion of at most thirty days. *Id.* But the Court did not expand on what types of motions would require a hearing and which would not, apart from quoting some legislative history which said that for "simple or routine motions" that do not require a hearing, the "necessary advisement time should be considerably less than 30 days." *Id.* (quoting S.Rep. No. 96-212, at 34 (1979)). Mr. Smith submits that his June motions were of the simple and/or routine sort that do not require a hearing.

We disagree that Mr. Smith's motions were simple or routine. Two of his June motions were motions to dismiss, and it seems appropriate that a hearing would be held to consider arguments, pro and con, for determining whether to

grant them. Other circuits that have considered the question of what motions do not "require a hearing" did not deal with motions to dismiss. In *United States v. Barnes*, a First Circuit case, the court held that a motion for a status conference did not require a hearing, because the motion involves "merely the simple administrative act of setting a date." 159 F.3d at 12. Other circuits have held that motions such as those seeking disclosure of extrinsic evidence and impeaching information, *United States v. Franklin*, 148 F.3d 451, 455 (5th Cir. 1998) or "pro forma motions to compel discovery in a criminal case," *United States v. Medina*, 524 F.3d 974, 979 (9th Cir. 2008), do not require hearings. We are satisfied that the motions in this case did not sink to this "pro forma" or "administrative" level.

Nor are we willing to credit Mr. Smith's oblique suggestion in his brief that his motions to dismiss were so lacking in intrinsic merit as not to require a hearing. *See* Aplt. Br. 25 ("No hearing was 'required' to dispose of these motions."). If so, counsel for Mr. Smith should have withdrawn his motions, or never made them, rather than wait for a hearing to have them resolved. Even if the motions were weak on the merits—as counsel seemed to have conceded was true of at least some of them—there was no abuse of discretion in the trial court's decision to have a hearing on them. And because there *was* a hearing on them, the time between the filing of the motions and the hearing was excludable under the Speedy Trial Act. Perhaps a hearing on Mr. Smith's motions was not strictly

speaking *necessary* to resolve them, but we will not second-guess the trial court's decision to hold one.

We pause to note one potentially worrisome implication of the government's position. In *Henderson*, the Supreme Court held that "for pretrial motions that require a hearing, the phrase 'or other prompt disposition' . . . does not imply that only 'reasonably necessary' delays may be excluded between the time of filing of a motion and the conclusion of the hearing thereon." 476 U.S. at 329–30. The wording implies that there is no such thing as an *unreasonable* delay from the time a motion is filed and the date a hearing is held, and as a result, no possible abuse of discretion by the trial court in waiting months, or even years, to hold a hearing on a motion. The government thus argues that "the Speedy Trial Act permits district courts to schedule hearings on pretrial motions as necessary, *without regard to whether any delay is reasonable*." Aple. Br. 10 (emphasis added). However, we need not reach this issue here, as the time of delay from the filing of Mr. Smith's motions to the hearing seems to have been reasonable.

### III. Juror Questioning

During the course of the trial, the court asked witnesses questions that had been submitted by the jury. At one point, the clerk informed the judge that a juror had a question. The judge took the juror's written questions (there were three), looked them over, and then read them to counsel as "questions that [they]

-9-

may consider during the recess." Aplt. App. 132–33. The court later asked the questions directly to a witness, because "they had not been asked" by either counsel. *Id*. at 134–35. Mr. Smith's counsel objected. *Id*. at 135. At another point, the court asked another juror-submitted question of a witness after both sides had completed their questioning. *Id*. at 136. We review the trial court's decision to allow juror questioning for abuse of discretion. *United States v. Ajmal*, 67 F.3d 12, 14 (2d Cir. 1995).

In *Ajmal*, the district court allowed questioning by the jurors "throughout the trial as a matter of course." *Id*. at 13. The *Ajmal* court recognized that while allowing jury questioning was within the trial court's discretion, the practice "is fraught with perils." *Id*. at 14 (quoting *United States v. Sutton*, 970 F.2d 1001, 1005 (1st Cir. 1992). One of those perils, the court explained, is that "[w]hen acting as inquisitors, jurors can find themselves removed from their appropriate role as neutral fact-finders." *Id*. As evidence of this danger in the present case, Mr. Smith points to an episode where, when a witness could not find a word, he was prompted by a juror. Aple. App. 137 (witness was "hemming and hawing and looking for a word . . . and then the juror said something and then the witness leaned forward, and she said it again."). After the juror interjected, Mr. Smith's counsel requested a mistrial. *Id*. at 138.

While we are mindful that permitting jurors to be inquisitors presents some dangers, we do not find those dangers realized in this case. In the first instance of

juror questioning, a juror submitted questions (saying she "didn't know if they were appropriate or not questions to ask"), which the judge reviewed, and concluded they were questions counsel could consider during recess. Aple. App. 132. The questions involved the different businesses Mr. Smith owned. When the court asked them, the witness did not know the answer to two of the questions. *Id.* at 134–35. The second time the court asked a juror-submitted question—a question about the mechanisms of an insurance policy—the judge followed the witness's response with, "All right. Does that engender any other questions on behalf of either side?" Aple. App. 136.

Both the questions and the manner the court dealt with them were benign. Although juror-questioning has risks, their questions "may serve to advance the search for truth by alleviating uncertainties in the jurors' minds, clearing up confusion, or alerting the attorneys to points that bear further elaboration." *United States v. Sutton*, 970 F.2d 1001, 1005 n.3 (1st Cir. 1992). These seem to have been the purposes served here: the questions asked by the juror in both instances were clarifying and factual ("clearing up confusion"). They were not one-sided, hostile, or frivolous and they pointed to areas where the attorneys might need to explain concepts further to the jurors. Moreover, in contrast to *Amjal*, there were only two points during the trial where the jury asked questions; the court did not allow or invite a steady stream of juror-participation, and the

-11-

jury did not take advantage of its opportunity to question witnesses.  *Cf. Amjal*, 67 F.3d at 15.

Finally, we find that the one instance of spoken juror intervention (supplying the missing phrase "electronic filing" to a witness) was innocuous.

There was no abuse of discretion.

## IV.  Conclusion

We **AFFIRM** the judgment of the district court.