FILED
United States Court of Appeals
Tenth Circuit

March 6, 2015

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellee,

v.

BRIAN HICKS, a/k/a "Solo", a/k/a "S",

     Defendant-Appellant.

No. 14-1069

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:07-CR-00184-WYD-4)**

---

Mark G. Walta of Walta LLC, Denver, Colorado, for Defendant-Appellant.

Paul Farley, Assistant United States Attorney, (John F. Walsh, United States Attorney, with him on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **HOLMES** and **BACHARACH**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

Defendant Brian Hicks entered a conditional plea of guilty and was convicted of (i) one count of possession with intent to distribute more than five kilograms of a mixture or substance containing a detectable amount of cocaine, in

violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii)(II); (ii) one count of possession of a firearm or ammunition by a felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2); and (iii) one count of possession of body armor by a felon previously convicted of a crime of violence, in violation of 18 U.S.C. §§ 931, 924(a)(7). The district court sentenced Hicks to 240 months' imprisonment.

Hicks raises two arguments on appeal: that the district court erred in denying his two motions to dismiss based on alleged violations of his speedy trial rights under the Speedy Trial Act and Sixth Amendment; and that the district court violated the prohibition against judicial participation in plea negotiations.

Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part, reverse in part, and remand with directions. We conclude that Hicks's Speedy Trial Act rights were violated, but his Sixth Amendment rights were not. Because we are remanding for the district court to determine whether the charges against Hicks will be dismissed with or without prejudice, we do not reach his challenge to the plea negotiations.

# I

Hicks's firearm and body armor charges arose from a 2005 shooting near a nightclub in Denver. Shortly after this shooting, Hicks was arrested. He was wearing a bulletproof vest and carrying a loaded .40 caliber Glock magazine. Because Hicks had previously been convicted of a felony, he was prohibited from possessing those items.

The narcotics charge resulted from an incident more than a year later, when Denver's Metro Gang Task Force intercepted a phone call suggesting that Hicks was going to meet a drug dealer at an auto shop to buy cocaine. Police observed the meeting. After Hicks left the shop in an SUV, the police attempted a traffic stop, which evolved into a car chase. As Hicks fled, he threw a black bag from the window of the SUV. The police later apprehended Hicks and recovered the bag, which contained several kilograms of cocaine.

On April 25, 2007, a federal grand jury indicted Hicks for a range of crimes committed in the course of a conspiracy to distribute cocaine. The events critical to the speedy trial issue took place in 2012, when the government's protracted prosecution of Hicks began to approach a resolution.

On July 3, 2012, the district court held a status conference and hearing on pending motions. At this hearing, the parties agreed that once the district court ruled on two pending motions there would be no unresolved motions remaining and the matter could be set for trial. The government indicated that the parties still needed to discuss some issues related to voir dire and the bifurcation of the trial, but the district court simply instructed the parties to meet and confer on those issues. On August 1, 2012, the district court ruled on the pending motions. The next day, the government moved the court "for an order setting a trial setting conference." ROA Vol. 6, at 516. The district court did not rule on this motion until September 27, 2012, when it scheduled a "status conference and hearing on

3

all pending motions" for November 28, 2012.[1]  Id. at 521.  However, on

November 15, before that status conference was held, Hicks filed two motions to

dismiss on speedy trial grounds.  The first alleged a violation of his Sixth

Amendment right to a speedy trial, and the second alleged a violation of the

Speedy Trial Act.

The district court denied both motions.  Hicks eventually pleaded guilty

and was sentenced on February 4, 2014.  In his plea agreement, Hicks reserved

the right to appeal the denial of his speedy trial motions.

## II

We review the denial of a defendant's Sixth Amendment speedy trial claim

de novo.  United States v. Banks, 761 F.3d 1163, 1174-75 (10th Cir. 2014).

However, we accept the district court's factual findings unless they are clearly

erroneous.  Id. at 1175.

The Sixth Amendment guarantees defendants in all criminal prosecutions

"the right to a speedy and public trial."  U.S. Const. amend. VI.  A defendant's

constitutional right to a speedy trial "attaches when he is arrested or indicted on

federal charges, whichever comes first."  Banks, 761 F.3d at 1181.  To determine

whether that right has been violated, we consider (i) the length of the delay,

(ii) the reason for the delay, (iii) whether the defendant asserted his right to a

---

[1] On October 1, 2012, the court vacated its original scheduling order and rescheduled the status conference for November 29, 2012.

4

speedy trial, and (iv) whether the delay prejudiced the defendant. United States

v. Larson, 627 F.3d 1198, 1207 (10th Cir. 2010) (citing Barker v. Wingo, 407

U.S. 514, 530 (1972)). This is a balancing test, so "[n]one of the factors is itself

necessary or sufficient to conclude that the Sixth Amendment speedy trial right

has been violated." Id.

a. *Length of Delay*

Before we will consider the other Barker factors, a defendant must show

that the delay "has crossed the threshold dividing ordinary delay from

'presumptively prejudicial' delay." United States v. Seltzer, 595 F.3d 1170, 1176

(10th Cir. 2010) (quoting Doggett v. United States, 505 U.S. 647, 651-52 (1992)).

This generally requires a delay that "approach[es] one year," a threshold Hicks

easily meets. See United States v. Batie, 433 F.3d 1287, 1290 (10th Cir. 2006).

Because Hicks satisfies this initial threshold, we consider the length of the delay

along with the other Barker factors. See Doggett, 505 U.S. at 652. The greater

the delay, the more that factor favors the defendant. Id.; cf. Seltzer, 595 F.3d

652. Here, the parties agree that the delay was five and a half years. Thus, this

factor favors Hicks.

b. *Reason for Delay*

"Delays attributable to the defendant do not weigh against the

government." United States v. Abdush-Shakur, 465 F.3d 458, 465 (10th Cir.

2006). We agree with the district court that Hicks is responsible for much of the

delay in this case. He filed more than forty unique motions, including several requesting that the district court extend filing deadlines or continue hearings. He also changed counsel several times during the course of the proceedings. And he requested that his federal prosecution be delayed until his state prosecution for first-degree murder was concluded.

Moreover, even the delay solely attributable to the government does not tip the balance in favor of Hicks. The record does not suggest that the delay attributable to the government resulted from anything other than benign reasons such as the government's negligence and the court's crowded docket. And while "[p]urposeful delay or delay to gain advantage weighs heavily against the government, . . . 'a more neutral reason such as negligence or overcrowded courts [is] weighted less heavily.'" United States v. Gould, 672 F.3d 930, 937 (10th Cir. 2012) (quoting Barker, 407 U.S. at 531) (second alteration in original).

On balance, we conclude that Hicks was the primary cause of the delay, and thus this factor weighs against him. See Larson, 627 F.3d at 1208.

c. *Assertion of Right*

"[I]f the defendant fails to demand a speedy trial, moves for many continuances, or otherwise indicates that he is not pursuing a swift resolution of his case, this factor weighs heavily against [him]." Gould, 672 F.3d at 938-39. In assessing a defendant's assertion of the right, it is appropriate to consider "the frequency and force of [his] objections." United States v. Margheim, 770 F.3d

6

1312, 1328 (10th Cir. 2014) (quoting United States v. Latimer, 511 F.2d 498, 501 (10th Cir. 1975)) (alteration in original).  Although Hicks first asserted his speedy trial rights in January 2008, he did not renew his speedy trial claim until August 2011, more than three years later.  Moreover, Hicks requested several continuances and extensions of time, and he did not object to the majority of the government's requests.  Thus, we cannot conclude that Hicks was "pursuing a swift resolution of his case."  Gould, 672 F.3d at 938.  This factor does not favor Hicks.

d. *Prejudice*

Hicks bears the burden of showing that he was prejudiced by the delay of his trial.  Larson, 627 F.3d at 1208-09.  Failure to show prejudice caused by the delay is "nearly fatal to a speedy trial claim."  Gould, 672 F.3d at 939.

"In cases of extreme delay, the defendant may rely on the presumption of prejudice and need not present specific evidence of prejudice."  Larson, 627 F.3d at 1209.  Generally, we require a delay of at least six years before the defendant is relieved of his burden to present specific evidence of prejudice.  Seltzer, 595 F.3d at 1180 n.3; Larson, 627 F.3d at 1209.  However, the Supreme Court's decision in Doggett v. United States suggests that we should consider only the delay attributable to the government, and not the delay attributable to the

7

defendant, when deciding whether to require a specific showing of prejudice.[2]

See 505 U.S. at 657-58; cf. United States v. Zabawa, 719 F.3d 555, 563 (6th Cir. 2013) ("The presumption of prejudice only applies, however, when the delay is attributable to the government's negligence. . . . And here, most of the delay was Zabawa's fault."). While the delay in this case—five and a half years—approaches the six-year threshold, the delay attributable solely to the government does not.[3]

Hicks must therefore make a particularized showing of prejudice which addresses the interests the speedy trial right was designed to protect, which include "(i) the prevention of oppressive pretrial incarceration; (ii) the minimization of anxiety and concern of the accused; and (iii) [the] minimization of the possibility that the defense will be impaired." Larson, 627 F.3d at 1209 (quoting Seltzer, 595 F.3d at 1179). "Impairment of the defense is the most important of these interests, and prevention of oppressive pretrial incarceration is the second most important." Id.

---

[2] In Doggett, the delay totaled eight and a half years, of which six were attributable to the government. See 505 U.S. at 657-58. The Supreme Court considered only the six-year delay resulting from the government's "inexcusable oversights," holding that it was sufficient to support a presumption of prejudice. Id. This holding is the source of our six-year requirement. See, e.g., Jackson v. Ray, 390 F.3d 1254, 1263-64 (10th Cir. 2004).

[3] Thus, while we have never definitively decided whether a delay shorter than six years could satisfy this prong without a specific showing, we need not address that question today. See Jackson v. Ray, 390 F.3d 1254, 1264 n.4 (10th Cir. 2004).

8

Hicks's interest in avoiding oppressive pretrial incarceration was not impaired in this instance because, beginning in November 2008, Hicks was also being held on murder charges pending in state court. He was ultimately convicted of murder and sentenced to life without the possibility of parole. Thus, a speedier resolution of his federal case would have had no effect on whether he would have remained incarcerated.

With respect to Hicks's interest in minimizing his anxiety and concern, "our cases suggest that we require the defendant to show some special harm suffered which distinguishes his case." Gould, 672 F.3d at 939 (internal quotation marks and citation omitted). Hicks presents no such evidence, so this factor does not favor him either.

That leaves Hicks with his argument that the delay "fundamentally hampered his ability to assist in his defense" because he was "housed in an administrative segregation unit at a Federal Correctional Facility . . . ." Aplt. Br. at 27. But aside from this conclusory assertion, Hicks does not specify how his defense was hampered. For example, he does not argue that the delay resulted in the loss of specific evidence or the unavailability of certain witnesses. Cf. United States v. Toombs, 574 F.3d 1262, 1275 (10th Cir. 2009). Nor did his housing in administrative segregation unduly restrict his access to his attorneys, who were generally able to visit him during regular business hours. Finally, Hicks requested numerous continuances and extensions of time, and any delay that

9

resulted from the granting of those motions could arguably have aided Hicks in the preparation of his defense. Hicks therefore cannot meet his burden of showing that he was actually prejudiced by the delay.

Thus, we conclude that the district court did not err in denying Hicks's motion to dismiss on Sixth Amendment speedy trial grounds.[4] We therefore turn to Hicks's argument that his rights under the Speedy Trial Act were violated.

## III

We review the denial of a motion to dismiss for violation of the Speedy Trial Act for abuse of discretion. Banks, 761 F.3d at 1174. However, we review the district court's "compliance with the legal requirements of the Act de novo and its underlying factual findings for clear error." Id.

The Speedy Trial Act provides that a defendant's trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). However, the Act allows for certain periods of delay to be

---

[4] Hicks also argues that the district court should have dismissed the charges under Fed. R. Crim. P. 48(b)(3), which provides that "[t]he court may dismiss an indictment, information, or complaint if unnecessary delay occurs in . . . bringing a defendant to trial." We review the denial of such a motion for abuse of discretion. United States v. Begay, 602 F.3d 1150, 1154 (10th Cir. 2010). Because Hicks's Sixth Amendment rights were not violated, we conclude that the district court did not abuse its discretion in declining to dismiss under Rule 48.

10

excluded from the seventy-day requirement.  Two such periods are key in the analysis of the present Speedy Trial Act claim.  For "any pretrial motion," the period of excluded delay extends "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion . . . ."  18 U.S.C. § 3161(h)(1)(D).  Otherwise, the excluded time includes the "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."  18 U.S.C. § 3161(h)(1)(H).  "[T]hese subsections work in concert such that if a motion is one that does not require a hearing, the Act excludes time through the period of its prompt disposition, but only if that period does not exceed thirty days from the date the motion is taken under advisement."  Margheim, 770 F.3d at 1318 (internal quotation marks and citation omitted).  A motion is "under advisement" once the district court has obtained all of the information necessary for it to rule on the motion.  See id. at 1322.

In the present case, our Speedy Trial Act analysis focuses on the 106-day period beginning August 1, 2012—when the parties agree the seventy-day speedy trial clock started after the district court ruled on the only remaining pretrial motions—and ending November 15, 2012, when Hicks moved to dismiss on speedy trial grounds.  The parties agree that the government stopped the speedy trial clock on August 2, 2012, by filing a motion titled "Motion for Trial Setting Conference to Set Trial."  But they disagree on the number of excludable days

11

resulting from that motion. Hicks contends that no more than thirty days should be excluded, and that the Act was violated on or about November 10, 2012. The government argues that no violation occurred.

We conclude that the Speedy Trial Act was violated because at least seventy non-excludable days elapsed between August 1 and November 15, 2012. This conclusion rests upon two premises: first, that the August 2 motion did not require a hearing, and therefore only thirty days are excludable after it was under advisement; and second, that the motion was under advisement at the time it was filed because it did not require a response from Hicks.

The government's "Motion for Trial Setting Conference to Set Trial" merely asked the court to set a date for a conference on the pending case. ROA Vol. 6, at 516. The First Circuit, in a closely analogous case, has held that just such a motion does *not* require a hearing. See United States v. Barnes, 159 F.3d 4 (1st Cir. 1998). In Barnes, the First Circuit acknowledged that "[a] motion requesting the scheduling of a status conference has undeniable 'pretrial' significance: all kinds of matters affecting the course of trial, including discovery, motions, and trial dates may be discussed at such a conference." Id. at 11. But the court nevertheless concluded:

> Because a motion requesting only the scheduling of a status conference requires no "hearing"—marked by oral argument, factual findings, or legal rulings—but involves merely the simple administrative act of setting a date, it must be resolved within 30 days of the date the Court has received all it expects to properly consider the request. It follows

12

that such a motion is resolved as soon as the conference is actually scheduled—not when the various matters for possible discussion, in fact, are broached—and that the clock will start again the following day. . . . *Because the setting of the date resolves the motion in its entirety, the conference cannot possibly represent a "hearing on . . . such motion."* 18 U.S.C. § 3161(h)(1)(F).

Id. at 12 (internal citations omitted) (emphasis added). We agree with the First Circuit's approach and find its analysis persuasive. Like the motion in Barnes, the government's motion here was resolved in its entirety when the district court scheduled the requested hearing.

The government urges us to look beyond the four corners of its motion, arguing that "important trial-related issues remain[ed] unresolved and [were] connected to [its] motion" implicitly. ROA Vol. 6, at 645. But if we were to accept the government's reasoning, we would in effect be holding that the existence of any remaining substantive issues in a case would justify an indeterminate excludable period even if there were no pending motions raising those issues. Such a result would be contrary to the Act, which explicitly requires a "pretrial motion" before the indeterminate excludable period is triggered. 18 U.S.C. § 3161(h)(1)(D) (emphasis added). It would also require a tortured reading of our own precedent.

For example, the government relies on our decision in United States v. Smith, 569 F.3d 1209, 1213 (10th Cir. 2009). But Smith is inapposite. Although the defendant in that case, like Hicks, argued that his motions were simple,

13

routine motions not requiring a hearing, id. at 1213, we disagreed because the pending motions were motions to dismiss, and we therefore concluded that it was appropriate that a hearing "be held to consider arguments, pro and con, for determining whether to grant them." Id. Moreover, we explicitly distinguished Barnes and similar cases involving "pro forma" or "administrative" motions such as the one the government filed here, which merely asked the court to set a date. Id.; cf. United States v. Loughrin, 710 F.3d 1111, 1120 (10th Cir. 2013); United States v. Apperson, 441 F.3d 1162, 1179-80 (10th Cir. 2006).

Likewise, United States v. Shellef, 718 F.3d 94, 111 (2d Cir. 2013), provides no support for the government's position. The government relies on the holding in Shellef that a "motion to set [a] trial date tolled [the] speedy trial clock because it could be reasonably construed as seeking a legal determination." Aplee. Br. at 18. But the Second Circuit arrived at that conclusion because the motion in question was "more than a routine request for scheduling," and was instead "a motion seeking a legal determination, *i.e.*, that the government had the right to proceed to retrial on the original indictment." Shellef, 718 F.3d at 111. The motion in Shellef called for substantive legal decisions in a way that the government's motion in this case did not.

We conclude that the government's August 2 motion was merely a "pro forma" or "administrative" motion that we and other circuits have held does not require a hearing. Indeed, the district court resolved the motion in its

14

entirety—without a hearing—on September 27, 2012, when it granted the government's request to schedule a hearing. Thus, the filing of the August 2 motion results in the exclusion of only thirty days from the time it was taken under advisement.

The government alternatively argues that the motion was not under advisement until thirty days after it was filed because the "motion could not be 'under advisement' until the district court could be reasonably certain that no response would be forthcoming from the defense," which it contends should result in an additional thirty excluded days. Aplee. Br. at 20-21. Of course, we acknowledge that "if the district court seeks more information on which to make its ruling on a motion, the advisement period does not begin until the court obtains that information." Margheim, 770 F.3d at 1322 (quoting United States v. Willie, 941 F.2d 1384, 1388 n.2 (10th Cir. 1991)) (internal quotation marks omitted). But here, the government moved simply "for an order setting a trial setting conference." ROA Vol. 6, at 516. It also represented that "there are no outstanding motions (save this one) tolling the speedy trial clock" and that "this matter should now be set for trial within 70 days." Id. As a practical matter, it is hard to imagine what response the district court might have expected from Hicks, especially given that Hicks had previously agreed to all substantive assertions contained in the motion in a pretrial hearing conducted less than a month before the motion was filed. See generally Hr'g Tr., ECF No. 1217. We conclude that

15

the motion was under advisement at the time it was filed.

In short, a "pro forma" or "administrative" motion—such as the government's motion here—does not require a hearing and therefore tolls the speedy trial clock only for thirty days from the date it is taken under advisement by the court. See Margheim, 770 F.3d at 1318; Barnes, 159 F.3d at 12. Moreover, the motion at issue here was under advisement at the time it was filed because no substantive issue was raised which would require a response from Hicks. Thus, the speedy trial clock expired on or about November 10, 2012, and the Act was violated. The district court therefore erred in denying Hicks's motion to dismiss pursuant to the Speedy Trial Act. Because we conclude that Hicks is entitled to relief under the Speedy Trial Act, we need not address his argument that the district court improperly participated in plea negotiations.

## IV

We AFFIRM the district court's denial of Hicks's motion to dismiss on Sixth Amendment speedy trial grounds. We REVERSE the denial of his motion to dismiss under the Speedy Trial Act and REMAND with directions to VACATE Hicks's convictions and to determine whether the pending charges should be dismissed with or without prejudice.[5]

---

[5] Although dismissal of the charges is required, "the district court retains broad discretion whether to dismiss the [charges] with or without prejudice." Abdush-Shakur, 465 F.3d at 462; see 18 U.S.C. § 3162(a)(1).

16