**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 25, 2024**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANGEL LANDA-AREVALO,

    Defendant - Appellant.

No. 22-3133

_____

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:16-CR-20016-DDC-7)**
_____

William D. Lunn, Tulsa, Oklahoma, for Defendant-Appellant.

Carrie N. Capwell, Assistant United States Attorney, Kansas City, Kansas (Kate E. Brubacher, United States Attorney, Topeka, Kansas, Michelle McFarlane, Kansas City, Kansas, and James A. Brown, Appellate Chief, Topeka, Kansas, with her on the brief), for Plaintiff-Appellee United States of America.
_____

Before **TYMKOVICH**, **MURPHY**, and **CARSON**, Circuit Judges.
_____

**CARSON**, Circuit Judge.
_____

If a district court has reasonable cause to believe a criminal defendant is mentally incompetent, the court must halt the proceeding and conduct a competency hearing. But once the district court determines that the defendant is competent by a

preponderance of the evidence, the district court need not order additional evaluation. Defendant Angel Landa-Arevalo received a pre-sentencing mental competency evaluation but argues the district court violated his Fifth Amendment rights by not providing him with a second, more extensive evaluation. Defendant also argues the district court violated his Sixth Amendment right to a speedy trial. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

A grand jury indicted Defendant for conspiracy to distribute and possess with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 846; and for possession with intent to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. § 841. That grand jury also indicted nine codefendants as coconspirators. The district court designated this case as complex—Defendant did not object.[1] On August 29, 2016, Defendant and his various codefendants jointly moved for a ninety-day continuance to review discovery. The district court granted the motion and scheduled a status conference for the end of the ninety-day period. At the status conference on November 28, 2016, the district court announced that it would set the trial date during the motions hearing scheduled for May 8, 2017—Defendant did not object. Before the motions hearing, on April 10, 2017, the district court granted a codefendant's motion to extend the deadline for

---

[1] Although the Government's Motion to Designate a Complex Case is not in the appellate record, we take judicial notice of it as a public record—a filing in the district court. See Guttman v. Khalsa, 669 F.3d 1101, 1130 n.5 (10th Cir. 2012) (citing United States v. Smalls, 605 F.3d 765, 768 n.2 (10th Cir. 2010)).

pretrial motions.  Defendant, for the first time, objected to the protracted timeline.  The district court rescheduled the motions hearing for September 20, 2017, and the jury trial for November 6, 2017.

On May 9, 2017, Defendant moved to sever his trial from his codefendants to protect his Sixth Amendment speedy trial rights.[2] The district court denied the motion.  On October 18, 2017, the district court granted a codefendant's motion to continue the trial over Defendant's objection and rescheduled the trial to August 13, 2018.  On July 30, 2018, the district court granted another codefendant's motion to continue the trial over Defendant's objection and rescheduled the trial to June 3, 2019.  In response, Defendant filed a second motion to sever his trial from his codefendants.  The district court denied the motion.

On May 31, 2019, Defendant moved pursuant to 18 U.S.C. § 4241 for a hearing to determine Defendant's mental competency.  The district court denied the motion.  On June 7, 2019, the jury convicted Defendant.  From his arraignment on February 23, 2016, to the start of the trial, Defendant remained in pretrial confinement for 1,196 days.

Prior to sentencing, Defendant and the Government jointly filed a motion for a mental competency hearing.  The district court granted the motion.

To assist with its competency determination, the district court appointed Dr. Alicia Gilbert, a forensic psychologist, to examine Defendant and report her results to

---

[2] Defendant also asserted rights under the Speedy Trial Act in his motion to sever, but he has not appealed the district court's decision on this basis.

the district court. Dr. Gilbert concluded Defendant "did not appear to be suffering from any severe mental illness or cognitive deficits," and that "there wasn't a lot of evidence to suggest any kind of serious mental illness." When asked what the "next step" would be "if the court should decide that [Defendant] needed more assessment," Dr. Gilbert advised that Defendant could "be sent to a federal medical center . . . where he could be assessed by a larger team of experts." Based on Dr. Gilbert's testimony and the district court's lengthy personal experience with Defendant, the district court concluded that Defendant was "more likely competent than not" and competent to proceed with sentencing.

## II.

### A.

On appeal, Defendant argues that the district court violated his Fifth Amendment right to procedural due process by not ordering a second competency evaluation. Defendant also argues that, without a second evaluation, the district court violated Defendant's Fifth Amendment right to substantive due process by finding Defendant competent to stand trial. We disagree.

We review a district court's determination on whether to order a competency examination for abuse of discretion. United States v. Ramirez, 304 F.3d 1033, 103 (10th Cir. 2022) (citing United States v. Prince, 938 F.2d 1092, 1095 (10th Cir. 1991)). We also review a district court's refusal to order a second competency examination for abuse of discretion. Prince, 938 F.2d at 1095 (citing United States v. Bodey, 547 F.2d 1383,

4

1387 (9th Cir. 1977); United States v. Stevens, 461 F.2d 317, 321 (7th Cir. 1972)).  We reverse the district court's determination only if it is "arbitrary, capricious, or whimsical, or results in a manifestly unreasonable judgment."  United States v. Weidner, 437 F.3d 1023, 1042 (10th Cir. 2006) (quoting Moothart v. Bell, 21 F.3d 1499, 1504–05 (10th Cir. 1994)).

The Fifth Amendment's Due Process Clause precludes district courts from subjecting a mentally incompetent criminal defendant to trial.  Drope v. Missouri, 420 U.S. 162, 171 (1975).  The Fifth Amendment's competency requirement is both procedural and substantive: a district court violates a criminal defendant's right to procedural due process by failing to hold an adequate competency hearing and violates a defendant's substantive due process rights by trying him during incompetency. McGregor v. Gibson, 248 F.3d 946, 952 (10th Cir. 2001) (citing Walker v. Att'y Gen., 167 F.3d 1339, 1343–44 (10th Cir. 1999)).

Congress established 18 U.S.C. § 4241(a), classifying a mentally incompetent defendant as one "presently . . . suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."  See Dusky v. United States, 362 U.S. 402, 402 (1960).  In reviewing a defendant's mental competency, courts must follow § 4241's two-step procedure.  First, a district court must determine whether reasonable cause exists to believe the defendant may be mentally incompetent; if so, the district court must conduct a competency hearing.  18 U.S.C. § 4241(a).  Second, if the competency hearing establishes the defendant's mental

incompetency by a preponderance of the evidence, the district court must halt the proceeding. 18 U.S.C. § 4241(d). As a discretionary measure, the district court may order a psychiatric or psychological examination of the defendant to assist in its competency determination. 18 U.S.C. § 4241(b).

The district court did not abuse its discretion by determining Defendant was "more likely competent than not" or by denying another evaluation. Defendant highlights his prior behavior, characterizing some of his actions as indicative of mental incompetency. Defendant also emphasizes a portion of Dr. Gilbert's testimony which, according to Defendant, suggests that an extended neurological evaluation would produce more reliable results. Even if we accept Defendant's characterization of the evidence, Defendant has established only the existence of another permissible view of the evidence—not that the district court's competency determination was arbitrary, capricious, or whimsical as is necessary for us to conclude the district court abused its discretion. See Weidner, 437 F.3d at 1042 (quoting Moothart, 21 F.3d at 1504–05).

To the contrary, the record provides a reasonable basis for finding Defendant mentally competent by a preponderance of the evidence. Dr. Gilbert testified that Defendant "did not appear to be suffering from any severe mental illness or cognitive deficits" and that "the evidence suggesting that he was competent outweighed the evidence suggesting that he wasn't." Through observation, Dr. Gilbert concluded that Defendant "was most likely competent."

Dr. Gilbert also gave the district court direct evidence of Defendant's ability to understand the nature of his legal proceedings. Dr. Gilbert testified that Defendant

6

"talk[ed] about getting a different attorney and the reasons why he wanted a different attorney." Dr. Gilbert also testified that Defendant expressed his "understanding that he was facing . . . some serious charges or was having to deal with legal consequences and was worried about self-incrimination and didn't want to talk to anyone other than an attorney who would keep it private," and that Defendant understood that Dr. Gilbert could not keep their conversations private.

The record also indicates that Defendant appeared before the district court many times between his initial appearance in 2016 and his mental competency hearing in 2021. Because a defendant's behavior and demeanor play central roles in a competency determination, we hesitate to pierce the observation-informed decisions of the district court, wielding only a cold appellate record. See United States v. Cornejo-Sandoval, 564 F.3d 1225, 1234 (10th Cir. 2009) (quoting United States v. Prince, 938 F.2d 1092, 1095 (10th Cir. 1991)).

Defendant highlights Dr. Gilbert's suggestion that Defendant could "be sent to a federal medical center" for "at least four months, a longer period of time, where he could be assessed by a larger team of experts." But two contextual concerns constrain the efficacy of this testimony. First, Dr. Gilbert made this statement in response to the Government's question about what "[t]he next step would be . . . *if* the court should decide that [Defendant] needed more assessment." (Emphasis added). Because the district court determined it did not need additional assessment to rule on Defendant's competency, Defendant's best evidence relies on a premise the district court rejected. Second, we do not doubt that psychiatrists would produce more accurate results with

7

longer observation—the law of large numbers almost certainly supports this proposition.

But we are not persuaded that the mere opportunity for an increase in statistical accuracy

obviates the district court's discretion.  The district court's conclusion that no reasonable

cause existed to believe Defendant was mentally incompetent was well within "range of

possible outcomes sustainable on the law and facts," and we therefore defer to the district

court's exercise of discretion.  Shook v. Bd. of Cnty. Comm'rs, 543 F.3d 597, 603 (10th

Cir. 2008) (citing United States v. McComb, 519 F.3d 1049, 1053 (10th Cir. 2007); Big

Sky Network, Ltd. v. Sichuan Provincial Gov't, 553 F.3d 1183, 1186 (10th Cir. 2008)).

And if the district court could reasonably conclude no reasonable cause existed to believe

Defendant was mentally incompetent, it could not have abused its discretion by not

ordering a second evaluation.[3]

Thus, the district court did not violate Defendant's procedural due process rights

under the Fifth Amendment.  Because Defendant's substantive due process claim

depends on his procedural due process claim, we further conclude that that the district

---

[3] Defendant also argues that the district court abused its discretion because retrospective competency hearings are generally disfavored.  We need not commend or condemn retrospective competency hearings because Defendant's competency determination was prospective, not retrospective.  As the district court's order clarifies, the hearing and competency proceedings determined only whether "[Defendant] *presently* is competent for this criminal proceeding to *continue*." (Emphasis added.)

court did not violate Defendant's Fifth Amendment substantive due process rights. McGregor, 248 F.3d at 952 (citing Walker, 167 F.3d at 1343–44).

B.

Until he filed his reply brief, Defendant's appeal asserted error based only upon the district court's pre-sentencing competency hearing. But in his reply brief and during oral argument, Defendant presented a new argument—that the district court violated his due process rights by not ordering a competency hearing before or during trial. We must reject this belated theory because Defendant waived the issue on appeal. See Reedy v. Werholtz, 660 F.3d 1270, 1274 (10th Cir. 2011) (quoting M.D. Mark, Inc. v. Kerr-McGee Corp., 565 F.3d 753, 768 n.7 (10th Cir. 2009)) ("[A] party waives issues and arguments raised for the first time in a reply brief.").

Defendant asks us to consider this issue on plain-error review, but such review is not available to Defendant because he waived, rather than forfeited, this argument. Forfeiture concerns our authority under Federal Rule of Criminal Procedure 52(b) to consider arguments not raised before the district court, provided the appellant requests plain-error review in either his opening or reply brief. United States v. Leffler, 942 F.3d 1192, 1200 (10th Cir. 2019) (citing United States v. Courtney, 816 F.3d 681, 683–84 (10th Cir. 2016)). But where an appellant does not raise the issue in his opening brief, he waives the issue, and we cannot review it. See Abernathy v. Wandes, 713 538, 552 (10th Cir. 2013) (explaining that discretionary plain-error review under Rule 52(b) permits review despite "lack of preservation"). To allow Appellant to make this argument for the

9

first time in his reply brief "would be manifestly unfair to the [Government] who, under our rules, has no opportunity for a written response." Hill v. Kemp, 478 F.3d 1236, 1251 (10th Cir. 2007) (quoting Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1278 (10th Cir. 1994)).  Here, Defendant waived appellate review of this issue by failing to assert it in his opening brief.  So we do not consider whether the district court violated Defendant's due process rights by not ordering a competency hearing before or during trial.

### III.

Defendant also claims the Government violated his Sixth Amendment right to a speedy trial.  We review Sixth Amendment speedy trial claims de novo, accepting the district court's factfinding unless clearly erroneous.  United States v. Hicks, 779 F.3d 1163, 1167 (10th Cir. 2015) (citing United States v. Banks, 761 F.3d 1163, 1174–75 (10th Cir. 2014)).

### A.

As a preliminary matter, the Government argues that Defendant did not preserve his speedy trial claim for appeal and we should review for plain error.[4]  We disagree.  A party preserves an issue for appeal by clearly "alert[ing] the district court to the issue and seek[ing] a ruling." U.S. Aviation Underwriters, Inc. v. Pilatus Bus. Aircraft, Ltd., 582

---

[4] Because Defendant has not argued for plain-error review in either brief, we would consider the issue waived and unreviewable if Defendant failed to preserve the issue for appeal.  Leffler, 942 F.3d at 1196, 1198 (holding that appellants must request plain-error review of unpreserved issues).  Thus, even though Defendant is not entitled to relief under either standard of review, we must decide which standard of review applies.

F.3d 1131, 1142 (10th Cir. 2009) (quoting Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co., 497 F.3d 1135, 1141 (10th Cir. 2007)).  Defendant unmistakably alerted the district court to his Sixth Amendment speedy trial rights and sought a ruling.  In his first motion to sever, Defendant argued that the district court should "sever his trial from the prosecution of others" because he had a "right to speedy trial under the Sixth Amendment" which would be prejudiced by the denial of his motion.  Defendant also argued the district court should sever the trials because "[c]ontinued delay prejudices [Defendant]'s right to a speedy trial under the Sixth Amendment."  When Defendant renewed his motion to sever, he reminded the court that he was doing so "to pursue his request for a speedy trial."  In each instance, Defendant invoked his Sixth Amendment right to a speedy trial.  Because Defendant raises the same right on appeal, we hold that Defendant preserved this issue.

B.

The Speedy Trial clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  As a threshold for speedy-trial analysis, Defendant must first show that the delay between his arrest and trial is "presumptively prejudicial."  Doggett v. United States, 505 U.S. 647, 651–52 (1992) (quoting Barker v. Wingo, 407 U.S. 514, 530–31 (1972)).  A delay that "approaches one year" is presumptively prejudicial.  Id. at 652 n.1.

The Government concedes that the delay between Defendant's arraignment and trial is presumptively prejudicial and sufficient to trigger speedy-trial analysis.

To determine whether a delay violates a defendant's Sixth Amendment speedy-trial right, we balance the four factors from Barker v. Wingo: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his desire for a speedy trial; and (4) . . . whether the delay prejudiced the defendant." United States v. Seltzer, 595 F.3d 1170, 1176 (10th Cir. 2010) (citing Barker, 407 U.S. at 530).  No one factor is determinative.  Barker, 407 U.S. at 533.

*Length of delay*: We assess how much the period between arrest and trial exceeded the minimum necessary: the greater the Government's delay, the heavier this factor weighs in Defendant's favor.  Seltzer, 595 F.3d at 1176 (citing Doggett, 505 U.S. at 652).  Because a one-year delay reaches the upper limit of "ordinary," Defendant's 1,196-day delay between arraignment and trial is substantial.  Id. (citing Doggett, 505 U.S. at 652) ("Two years is twice the time presumed to be ordinary.")  Thus, we conclude that this factor weighs in Defendant's favor.

*Reason for delay*: We engage in a two-part inquiry, asking (1) why the delay occurred, and (2) whether the government bears the responsibility for the delay.  See Doggett, 505 U.S. at 657.  This factor weighs against the Government insofar as the Government contributed to the delay.  Id.  But if the government "present[s] acceptable

reasons for the delay" we will hold this factor weighs against Defendant.  United States v.
Margheim, 770 F.3d 1312, 1326 (10th Cir. 2014).

The Government presents acceptable reasons for delaying Defendant's trial.
Defendant concedes that he agreed to the delays between his arrest and the motions
hearing scheduled for May 8, 2017, waiving his speedy trial rights for this period.
Indeed, Defendant acquiesced and personally contributed to the delays preceding May 8,
2017.

The district court set Defendant's trial to begin on November 6, 2017.  But one of
Defendant's codefendants sought a continuance, prompting the district court to
reschedule the trial for August 13, 2018.  And then another codefendant moved for a
continuance, prompting the district court to again reschedule the trial for June 3, 2019.
Although Defendant opposed both continuances, we conclude that the reasons for the
delay weigh against Defendant.  This Barker factor weighs for a defendant only where
the government bears responsibility for the delay, and here a codefendant, not the
Government, caused the delay.  See United States v. Batie, 433 F.3d 1287, 1291 (10th
Cir. 2006).  We have consistently held that delays caused by codefendants are not
attributable to the government and weigh against defendants.  E.g., United States v.
Keith, 61 F.4th 839, 853 (10th Cir. 2023); Margheim, 770 F.3d at 1327–28; United States
v. Tranakos, 911 F.2d 1422, 1428 (10th Cir. 1990).  This factor, therefore, weighs against
Defendant.

*Assertion of right*: Our assessment under this factor is a question of timing—"[t]he
sooner a defendant raises the speedy trial issue, the more weight this factor lends to his

13

claim. This factor weighs against a defendant who . . . waits for months to assert his speedy trial right." See United States v. Larson, 627 F.3d 1198, 1208 (10th Cir. 2010) (citing United States v. Toombs, 574 F.3d 1262, 1274–75 (10th Cir. 2009)). Although Defendant adequately preserved his speedy trial right, he did so belatedly. The record establishes that Defendant first asserted his Sixth Amendment speedy trial right in his motion to sever on May 9, 2017, meaning Defendant did not assert this right for 441 days after his arraignment. Defendant also agreed to postpone his trial scheduled for April 22, 2016, and, by his own admission, Defendant did not object when the district court decided it would set a trial date on May 8, 2017—necessarily accepting a trial date after this date. We are not persuaded by Defendant's assertion of his speedy trial right because he "sat on his hands" for well over a year and contributed to the delay in the meantime. United States v. Abdush-Shakur, 465 F.3d 458, 465 (10th Cir. 2006); see United States v. Garcia, 59 F.4th 1059, 1069 (10th Cir. 2023) (concluding the third Barker factor weighed against the defendant where he waited eight months after indictment to invoke his speedy-trial rights); Tranakos, 911 F.2d at 1429 (citing United States v. Loud Hawk, 474 U.S. 302, 314–15 (1986)) ("We are unimpressed by a defendant who moves for dismissal on speedy trial grounds where his other conduct indicates a contrary desire."). We hold this factor weighs against Defendant.

*Prejudice*: Defendant bears the burden to show he suffered prejudice because of the delay. Seltzer, 595 F.3d at 1179 (quoting Toombs, 574 F.3d at 1275). We have held that a six-year delay is per-se prejudicial if it is attributable to the government. Hicks, 779 F.3d at 1168 (citing Doggett, 505 U.S. at 657–58). So, Defendant must "make a

14

particularized showing of prejudice" because the period of Government-attributable delay is less than six years. Id. at 1169. We assess whether Defendant suffered prejudice considering the three interests the speedy trial right protects: (1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety or concern; and (3) minimizing the likelihood of impairing the defense. Toombs, 574 F.3d at 1275 (citing Barker, 407 U.S. at 532).

Defendant makes a sole assertion of prejudice: that the naturally oppressive nature of pretrial incarceration was exacerbated by his lack of prior incarceration experience, separation from family, back pain, and adjustment disorder. We reject Defendant's premise. Announcing that pretrial incarceration is oppressive does not make it so. As we've held before, pretrial detainment is not presumptively prejudicial, and we cannot hold that Defendant's subjugation to pretrial detainment was prejudicial absent a particularized showing of prejudice. Hicks, 779 F.3d at 1169. Further, "without evidence that the defense was hindered as a result of the delay, the fourth Barker factor simply cannot weigh in [Defendant's] favor." Garcia, 59 F.4th at 1071. Because Defendant has made no such showing, we conclude Defendant has failed to show particularized prejudice. This factor weighs heavily against Defendant. See id. at 1069 (quoting Margheim, 770 F.3d at 1329) ("[F]ailing to specify prejudice will 'eviscerate the defendant's claim.'").

In sum, having weighed the Barker factors, we conclude that the Government did not violate Defendant's Sixth Amendment right to a speedy trial.

AFFIRMED.

15